1  RICHARD D. McCUNE, State Bar No. 132124
   rdm@mccunewright.com
2  JAE (EDDIE) K. KIM, State Bar No. 236805
   jkk@mccunewright.com
3  McCUNEWRIGHT LLP
   2068 Orange Tree Lane, Suite 216
4  Redlands, California 92374
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6  Attorneys for Plaintiff and the putative class

7  *Additional counsel listed on page 2

8

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  YUNG KIM, on behalf of himself and all          ) Case No.: CV 11-06459 GAF (MRWx)
    others similarly situated,                      )
13                                                   ) ***FIRST AMENDED* CLASS ACTION**
                                                     ) **COMPLAINT**
14              Plaintiffs,                          )
                                                     ) 1. VIOLATION OF UNFAIR
15        v.                                          )    BUSINESS PRACTICES ACT
                                                     )    [CALIFORNIA BUSINESS &
16  GENERAL MOTORS LLC; and DOES 1                   )    PROFESSIONS CODE § 17200, ET
    through 10, inclusive,                           )    SEQ.]
17                                                   )
               Defendants.                           ) 2. VIOLATION OF FALSE
18                                                   )    ADVERTISING LAWS
                                                     )    [CALIFORNIA BUSINESS &
19                                                   )    PROFESSIONS CODE § 17500, ET
                                                     )    SEQ.]
20                                                   )
                                                     ) 3. VIOLATION OF CALIFORNIA'S
21                                                   )    CONSUMER LEGAL REMEDIES
                                                     )    ACT [CALIFORNIA CIVIL CODE
22                                                   )    § 1750, ET SEQ.]
                                                     )
23                                                   ) 4. FRAUD
                                                     )
24                                                   ) 5. NEGLIGENT
                                                     )    MISREPRESENTATION
25                                                   )
                                                     ) 6. DECEIT [CALIFORNIA CIVIL
26                                                   )    CODE § 1710]
                                                     )
27                                                   ) Judge: Hon. Gary A. Feess
                                                     ) Original Complaint Filed: August 5, 2011
28                                                   )

-1-

1 | Daniel H. Chang, State Bar No. 183803
2 | Larry W. Lee, State Bar No. 228175
DIVERSITY LAW GROUP, A Professional Corporation
444 S. Flower Street, Suite 1370
3 | Los Angeles, CA 90071
Telephone: (213) 488-6555
4 | Facsimile: (213) 488-6554

5 | Edward W. Choi, State Bar No. 211334
LAW OFFICES OF CHOI & ASSOCIATES
6 | A Professional Corporation
3435 Wilshire Boulevard, Suite 2410
7 | Los Angeles, CA 90010-2006
Telephone: (213) 381-1515
8 | Facsimile: (213) 233-4409

9 | Attorneys for Plaintiff and the putative class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1    Plaintiff YUNG KIM, an individual, on behalf of himself and on behalf of all

2    others similarly situated (*i.e.*, the members of the Plaintiff Class described and defined

3    within this Complaint), herein alleges as follows:

4                                              I

5                              **JURISDICTION AND VENUE**

6        1.    This Court has original jurisdiction of this action under the Class Action

7    Fairness Act of 2005.  The amount-in-controversy exceeds the sum or value of

8    $5,000,000 exclusive of interest and costs, and there is minimal diversity because certain

9    members of the class are citizens of a different state than any defendant as required by 28

10   U.S.C. § 1332(d)(2).

11       2.    Venue as to Defendant is proper in this judicial district.  Defendant General

12   Motors LLC sells a substantial amount of automobiles in this district, has dealerships in

13   this district, and many of Defendant's acts complained of herein occurred in Los Angeles

14   County, California.

15                                            II

16                              **GENERAL ALLEGATIONS**

17       3.    This is a civil action primarily challenging the pervasive false

18   advertisements disseminated by Defendant GENERAL MOTORS LLC (hereinafter

19   "Defendant" or "GM") regarding the expected gas mileage of its vehicle models.  In

20   attempting to exploit the increasingly strong consumer market preference for high gas

21   mileage vehicles, GM advertises expected gas mileage and vehicle range on a single tank

22   of gas, without disclosing, or inadequately disclosing, that the mileage is not an estimate

23   of real world mileage because the estimate is based on an EPA test that does not require

24   the test vehicle to be the same as the one purchased by buyers, is conducted under non-

25   real world lab conditions, uses special fuel, and is obtained using a professional driver in

26   a lab test that is trained to obtain the highest gas mileage possible during the test.

27       4.    Plaintiff fell victim to these false advertisements when he purchased a 2011

28   GMC Terrain based on advertisements that it would experience 32 miles per gallon in

*FIRST AMENDED* CLASS ACTION COMPLAINT
Case No.:  CV 11-06459 GAF (MRWx)

1  highway use and will travel 600 miles on a single tank of gas, when, in fact, these

2  vehicles attain substantially and materially lower gas mileage under real world driving

3  conditions, do not get 32 miles per gallon, and will not travel 600 miles on a single tank

4  of gas under normal highway use.  Furthermore, to the extent that these advertisements

5  provided any information that they were based on EPA estimates, they failed to disclose

6  that the EPA estimates are utilized for standard comparison between vehicles, and do not

7  estimate real world mileage that the customer can expect to get with the vehicle. Plaintiff,

8  for himself and all others similarly situated, brings this action for legal and equitable

9  remedies pursuant to the Unfair Business Practices Act, California Business &

10  Professions Code § 17200, *et seq.*; False Advertising, California Business & Professions

11  Code § 17500, *et seq.*; Consumer Legal Remedies Act, California Civil Code § 1750, *et*

12  *seq.*; statutory Deceit, California Civil Code § 1710; and common law fraud and

13  negligent misrepresentation.

14       5.     Plaintiff YUNG KIM (hereinafter "Plaintiff") is a resident and citizen of the

15  city of Valencia, County of Los Angeles, State of California.  He purchased a new 2011

16  GMC Terrain crossover vehicle on or about January 3, 2011, at Parkway Motorcars, a

17  GM dealership located in Valencia, after researching, viewing, and relying on print and

18  online advertisements disseminated by GM throughout California and the United States

19  regarding the expected gas mileage and range of travel on a single tank of gas of the

20  vehicle under normal highway use.

21       6.     Defendant GENERAL MOTORS LLC is a corporation incorporated in the

22  state of Delaware, and is a citizen of and has its principal place of business in the city of

23  Detroit, State of Michigan.  GM was and now is authorized to do business in the State of

24  California, and based on information and belief, GM has a market share of approximately

25  eight percent of retail auto sales.

26       7.     The true names and capacities of Defendants sued herein as DOES 1 through

27  10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by

28  such fictitious names.  Each of the Defendants designated herein as a DOE is legally

-4-

1  responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek
2  leave of Court to amend this Complaint to reflect the true names and capacities of
3  Defendants designated herein as DOES when such identities become known.

4        8.     Based upon information and belief, Plaintiff alleges that at all times
5  mentioned herein, each and every Defendant was acting as an agent and/or employee of
6  each of the other Defendants, and at all times mentioned was acting within the course and
7  scope of said agency and/or employment with the full knowledge, permission, and
8  consent of each of the other Defendants.  In addition, each of the acts and/or omissions of
9  each Defendant alleged herein were made known to, and ratified by, each of the other
10  Defendants.

11  **III**

12  **FACTUAL ALLEGATIONS**

13  **A.**    **Plaintiff YUNG KIM**

14        9.     Plaintiff YUNG KIM purchased a new 2011 GMC Terrain crossover vehicle
15  on or about January 3, 2011, at Parkway Motorcars.  Plaintiff and his wife were expecting
16  their first child and needed a larger vehicle for their family.  In addition, Plaintiff and his
17  wife, who worked outside the home, had decided that his wife would stay home with
18  their baby.  As a result of the consequent loss of income, the total cost of the vehicle they
19  were purchasing was extremely important to Plaintiff.  One of the most important
20  components of the total cost of the vehicle was the gas mileage, as Plaintiff was intending
21  to put a substantial number of miles on the vehicle each year.

22        10.    Because this was such an important decision for the family, Plaintiff
23  shopped for an extended period before buying the vehicle.  He went to the dealership on
24  numerous occasions and was provided by the dealer the brochure that contained
25  important information about the vehicle.  He also reviewed magazines about the vehicle,
26  including Motor Trend, Wired, and Road & Track.  Finally, he reviewed GM's web site
27  that provided information about the vehicle.

28

-5-

11.     When researching the GMC Terrain by reviewing GM websites, television commercials, and print advertisements in magazines, Mr. Kim was very impressed with the high gas mileage that these materials advertised the Terrain would achieve and was led to believe that the high gas mileage would be reflective of what he would experience during normal, real-world highway use.  Some of the advertisements that reasonably led him to this belief were as follows:

- Page excerpt from 2011 GMC Terrain brochure entitled "Going the Extra Mile to Make the Most Out of every Inch."  (Attached hereto as Exhibit 1, with an enlarged version of the referenced section of the brochure attached as Exhibit 2.)  It states that the Terrain "has the best highway fuel economy in its class at 32 highway miles per gallon" and displays a chart that includes a reference to "UP TO 600 HWY MILES."  Beside this chart is a map which outlines in red a route from Chicago, past Cleveland and Buffalo, to Rochester, New York, which is over 600 miles.  The brochure goes on to state that the "Terrain offers class-leading highway fuel economy without sacrificing performance.  Equipped with a 2.4L I-4, Terrain offers 32 EPA-estimated highway miles per gallon, *and* can go up to 600 highways miles on a single tank of gas."  (Emphasis added)

- A General Motors advertisement in Road & Track magazine which states "32 HWY MPG RATED, AVAILABLE POWER LIFTGATE, SEATING FOR 5 ADULTS.  WE PROBABLY HAD YOU AT 32 MPG."  (Attached hereto as Exhibit 3.)

- Page excerpt from 2011 GMC Terrain brochure for the 2011 GMC Terrain stating, "AT 32 HIGHWAY MILES PER GALLON, WE GAVE IT BETTER FUEL ECOMONY THAN ANY SUV OR CROSSOVER", with a fine print footnote stating "EPA estimated".  (Attached hereto as Exhibit 4.)

12.     Based on these representations, Mr. Yung reasonably believed that the Terrain would achieve approximately 32 miles per gallon and travel 600 miles on a single

-6-

1 tank of gas during normal, real-world highway use.  Furthermore, none of these
2 advertisements provide any disclaimer that the actual gas mileage under normal, real
3 world driving conditions will actually and substantially vary from the advertised gas
4 mileage and travel range of a tank of gas.

5     13.    Plaintiff heavily relied on these representations when he decided to buy the
6 2011 GMC Terrain.  His wife did not want to buy the vehicle as she favored other
7 vehicles.  Plaintiff provided her with the brochure and advertisements about the fuel
8 mileage to convince her to purchase the vehicle, and without the representations in the
9 advertisements about the mileage per gallon and travel range of the vehicle on a single
10 tank of gas, Plaintiff would not have purchased the vehicle.

11     14.    However, after purchasing the vehicle, Mr. Yung discovered that it
12 consistently achieved gas mileage far below the advertised mileage under normal, real-
13 world use.  He took the vehicle to the GM dealership twice to complain about the
14 discrepancy.  The first time the dealership indicated that it was likely a maintenance
15 issue.  When Plaintiff pointed out the vehicle had only 1,500 miles, the dealership then
16 indicated they would look into it and get back to him.  They did not.  The second time the
17 dealership checked to see if there were any bulletins about low mileage and indicated
18 there were not and that there was nothing they could do to help Plaintiff achieve higher
19 gas mileage.

20     15.    GM's advertisements made to Plaintiff and the putative class members were
21 false, as the Terrain does not travel 600 miles on one tank of gas or attain an average 32
22 miles per gallon throughout those 600 miles under normal highway driving conditions.

23     16.    Had it been disclosed to Mr. Yung that GM's advertisements of the Terrain's
24 expected gas mileage under normal highway conditions were inflated compared to the
25 actual performance of the vehicle he purchased, than he would not have purchased the
26 2011 GMC Terrain.  Mr. Kim has, therefore, been damaged by the amount of the
27 purchase price of the vehicle, and seeks, on behalf of himself and the putative class,
28 damages, rescission, restitution, and injunctive relief in the form of requiring GM to

-7-

1   cease its false advertising and engage in a corrective campaign to fully disclose material

2   information about the vehicle's mileage.

3   **B.      Defendant General Motors LLC**

4           17.     GENERAL MOTORS LLC is one of the largest auto-manufacturers in the

5   world, and designs, manufactures, advertises, and sells numerous well-known brands,

6   including GMC, Chevrolet, Buick, and Cadillac.  In attempting to capitalize on strong

7   consumer preference for better fuel economy and smaller vehicles, GM has focused the

8   last couple of years on producing, advertising, and selling smaller, more fuel-efficient

9   vehicles, including the crossover model GMC Terrain.  However, in the process of

10  promoting sales, GM has engaged in widespread misleading and deceptive

11  advertisements, including throughout California, regarding the real-world gas mileage of

12  these vehicles by promoting grossly inflated gas mileage numbers which the vehicles, in

13  fact, fall substantially short of attaining in real world, normal use.  It does that by either

14  failing to disclose the MPG number is based on an EPA test, and/or fails to disclose that

15  the EPA test numbers are inflated in relation to real world driving conditions.

16          18.     GM, like all major auto-manufacturers, has realized the extent to which

17  modern consumers highly value fuel-efficiency as a result of the prolonged spike in gas

18  prices and the nationwide recession.  Based on information and belief, most consumers

19  consider high fuel economy important and a substantial factor in their purchasing

20  decisions for new vehicles.  Customers' strong preference for more fuel-efficient vehicles

21  is based on the fact that these vehicles provide greater savings for consumer budgets.  As

22  a result of these strong trends in market preference and demands, all auto-manufacturers

23  began focusing on appealing to these characteristics of the market.

24          19.     Although GM was perhaps the last major auto-manufacturer to embrace this

25  strategy, it finally did so by focusing on designing smaller, lighter, more fuel efficient

26  vehicles.  However, in promoting the expected gas mileage of these new models, GM

27  engaged in a pervasive, multi-media advertising campaign which lauded the high gas

28  mileage attained by its vehicles in order to induce customers to believe that was the gas

-8-

1   mileage that they would obtain under normal, real world driving conditions. For

2   instance, the 32 mile per gallon figure that was provided in the advertisements for the

3   Terrain was an EPA fuel mileage figure used for sticker comparisons that, pursuant to

4   federal law, must include on the window sticker an accompanying disclosure that the

5   EPA estimate would not reflect real world fuel mileage. The reason is, as GM was well

6   aware, that the miles per gallon under EPA test conditions grossly overstates actual

7   expected highway mileage in real world driving conditions.

8       20.    The purpose of the EPA gas mileage estimate is to provide a consistent way

9   for consumers to be able to compare the fuel efficiency of different vehicles under

10  identical test conditions. However, the EPA estimates are not designed to determine, nor

11  are they accurate predictors of, the actual expected mileage for a vehicle under normal,

12  real life driving conditions. The reason is that the test conditions are such as to maximize

13  fuel mileage far beyond what a normal customer would experience. First, the EPA

14  mileage tests are not conducted on roads, but rather are conducted in laboratories on

15  machines known as dynamometers that do not provide the normal challenges to fuel

16  mileage as would be experienced under real world driving conditions. Further, the

17  highway portion of the test averages only 48.3 mph and tops out at 60 mph. Obviously,

18  an average highway speed of 48.3 mph is not reflective of normal highway speeds and

19  will result in inflated mpg versus normal highway driving conditions. In addition, the

20  fuel used for these tests is a special fuel that is more efficient than fuel used by

21  consumers in normal driving conditions. Also, the test lasts about 95 minutes with the

22  car's air conditioning on for just 10 minutes of that time. Finally, the test is performed

23  with only the driver, who is a professional driver whose job is to maximize the results of

24  the test. Each of these issues results in a test mpg figure that is inflated over what can be

25  expected in real world driving conditions and, as such, is improper to use for purposes of

26  representing to customers what they can expect from the vehicle in real life driving

27  conditions.

28

21.   Additionally, the EPA relies on automakers to conduct their own tests, and self-report the results. The agency physically tests and audits only about 15% of the models on the market.

22.   As a result of the tremendous difference in driving conditions between the EPA testing and normal, real world driving, the EPA mileage estimates are substantially inflated in comparison to the mileage attained by the same models while driven in the real world.

23.   On its website, the EPA acknowledges this discrepancy by stating the rating "may not accurately predict the average MPG you will get." In fact, the EPA, which requires that auto-manufacturers place window stickers on new models with the EPA city and highway estimates printed on them, also requires on the sticker as a significant, material disclosure the words, "[a]ctual mileage *will vary*," pursuant to 40 C.F.R. § 600.307-86(a)(ii)(A). (Emphasis added.)

24.   In particular, this severe discrepancy in the EPA estimates and actual performance of the GMC Terrain have been well documented. A 2011 expert review published in the respected industry website "Edmunds.com," noted about the GMC Terrain that the "[e]stimated fuel stands at 22 mpg city/32 mpg highway and 26 mpg combined . . . . These numbers are impressive, but after extensive testing, we have failed to see such thriftiness from the four-cylinder Terrain – especially on the highway." The same discrepancy has also been discovered with respect to the GMC Terrain's twin, the Chevrolet Equinox, a discrepancy that was the subject of a recent investigative piece published in the Los Angeles Times on August 2, 2011.

25.   However, Plaintiff does not challenge the EPA figures for the subject vehicles or the manner in which those figures were calculated, subject to confirmation that the EPA estimates for these vehicles were the result of the EPA-approved testing conditions. Instead, Plaintiff challenges GM's systematic advertising scheme that misleadingly and unfairly uses the EPA mileage numbers to represent and imply that the

-10-

1   miles-per-gallon highway EPA estimate reflects actual, expected mileage under normal,
2   real world driving conditions.

3        26.     Although mention of the EPA estimates alone is not fraudulent or deceptive
4   when accompanied by explicit disclosures that such estimates are EPA estimates and that
5   they should not be used to predict actual mileage, GM , when it discloses that these MPG
6   figures are EPA estimates, couches the official EPA number among explicit and implicit
7   statements and context throughout the advertisements which misrepresent the expected
8   gas mileage of subject vehicles in normal, real world conditions.  These widely
9   disseminated statements and advertisements, in addition to those identified in paragraph
10  10 include the following:

- Press Release, dated June 1, 2011, entitled "May U.S. Retail Sales Rise 9 Percent on Demand for Fuel-Efficient Vehicles."  Regarding GM's compact crossovers the Equinox and Terrain, vice president of U.S. Sales Operations Don Johnson is quoted as saying "[c]ustomers love the 610-mile range that our compact crossovers provide and they get it without sacrificing capability or style".  This is a false representation as the subject vehicles are not "capable" of being driven 610 miles on one tank of gas in normal, real world highway conditions.

- GM's Chevrolet website for the Equinox, which states:"Meticulous craftsmanship and upscale styling combined with a flexible interior and class-leading highway fuel economy (5,6) sets Equinox apart from the rest. With 32 MPG highway and a highway driving range of up to 600 miles, Equinox beats Honda CR-V, Toyota RAV4 and even Ford Escape Hybrid." This repeats the same false claims GM represents about the Terrain's actual mileage and driving range in normal, real-world use.  GM's intent to falsely portray the EPA estimate as actual expected mileage is revealed by the fact no reference is made to "EPA estimate" in association with the "32 MPG" or "600 miles."  Moreover, not only is the *only* disclosure regarding the

-11-

1   advertised mileage being an EPA estimate contained in a footnote,
2   referenced in association with the claim of "class-leading highway fuel
3   economy (5,6)," that does not even appear on the same web page as text to
4   which the footnote refers.  Instead, the user must actually drag the mouse
5   pointer over the text "view additional disclosures" at the very bottom of the
6   web page before they will discover that the mileage being referred to in the
7   advertisement is an EPA estimate and not expected mileage under normal
8   driving conditions.

9   Further, television, online, and print advertisements prominently display the EPA figure
10  without disclosing that the actual mileage *will vary*.  Federal law requires that the sticker
11  labels disclaim EPA mileage estimates with the words, "[a]ctual mileage *will vary*,"
12  pursuant to 40 C.F.R. § 600.307-86(a)(ii)(A), but GM's multi-media advertisements omit
13  the disclaimer entirely.  (Emphasis added.)  Such advertisements include:

14  • Example D: Magazine advertisement which states "32 HWY MPG RATED,
15    AVAIALBLE POWER LIFTGATE, SEATING FOR 5 ADULTS.  WE
16    PROBABLY HAD YOU AT 32 MPG."  (Exhibit 3,)

17  • Example E: The television spot entitled "May the Best Car Win: GMC
18    Terrain vs. Mini," which favorably compares solely the EPA estimates for
19    the GMC Terrain versus the Mini Cooper, without appropriate disclosures.

20  • Example F: Brochure for the 2011 GMC Terrain stating, "AT 32
21    HIGHWAY MILES PER GALLON, WE GAVE IT BETTER FUEL
22    ECOMONY THAN ANY SUV OR CROSSOVER", with a fine print
23    footnote stating "EPA estimated," but no other material disclosures.
24    (Exhibit 4.)

25  The advertisement scheme to push misleading information about actual gas mileage
26  performance was and is pervasive and includes many other substantially similar
27  advertisements not mentioned herein.  Based on information and belief this pattern of
28  non-disclosure is used throughout its models.

-12-

27.     Plaintiff and the putative class reasonably relied on GM's material false representations regarding the miles per gallon during normal, real world highway use of its vehicles.  A reasonable consumer would expect a vehicle advertised as attaining an advertised miles per gallon under real world highway use would actually perform as such. Furthermore, a reasonable consumer in today's market attaches material importance to advertisements of high gas mileage, as fuel efficiency is one of the most, if not *the* most, important considerations in making purchasing decisions for most consumers.

28.     As a result of GM's misleading advertising scheme, GM has recorded significantly increased sales and greater market shares in California and throughout the country.  For instance, GM has recently reported that GM's crossover retail sales were the highest ever for the month of May and were driven by a 58 percent increase in combined retail sales for the 32 mile-per-gallon highway rated Equinox and Terrain, and that these vehicles have set retail sales records for the month with Equinox retail sales up 62 percent and Terrain's 48 percent higher than May 2010.

## IV

## CLASS ACTION ALLEGATIONS

29.     Plaintiff initially proposes a Nationwide class – the "Class" – defined as follows:

**All owners of GM automobiles who purchased the vehicles in the United States and where GM made false or misleading statements and advertisements about MPG gas mileage in real world conditions.**

Excluded from the above class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

30.     Alternatively, Plaintiff proposes a California class, defined as follows:

**All owners of GM automobiles who purchased the vehicles in California and where GM made false or misleading statements**

-13-

1    **and advertisements about MPG gas mileage in real world**

2    **conditions.**

3    Excluded from the above class is any entity in which Defendant has a controlling interest,

4    and officers or directors of Defendant.

5        31.    This action is brought as a class action and may properly be so maintained

6    pursuant to the provisions of the Federal Rules of Civil Procedure 23(a) and 23(b).

7    Plaintiff reserves the right to modify the class definitions and the class period based on

8    the results of discovery.

9        32.    <u>**Numerosity of the Class**</u> – The members of the Class are so numerous that

10   their individual joinder is impracticable. Plaintiff is informed and believes that there are

11   at least thousands of purchasers in the class. Inasmuch as the class members may be

12   identified through business records regularly maintained by Defendant and its employees

13   and agents, and through the media, the number and identities of class members can be

14   ascertained. Members of the Class can be notified of the pending action by e-mail, mail,

15   and supplemented by published notice, if necessary;

16       33.    <u>**Existence and Predominance of Common Question of Fact and Law**</u> –

17   There are questions of law and fact common to the Class. These questions predominate

18   over any questions affecting only individual class members. These common legal and

19   factual issues include, but are not limited to:

20           a. Whether the subject vehicles achieve gas mileage materially lower than

21              the advertised expected mileage;

22           b. Whether the subject vehicles achieve range on a single tank of gas

23              materially less than the advertised expected range;

24           c. Whether GM's advertisements were false and deceptive in advertising

25              the expected mileage of the subject vehicles in normal, real world

26              highway usage;

27

28

-14-

d. Whether GM's advertisements failed to provide material disclosures that the expected gas mileage cannot be achieved in normal, real world highway usage;

e. Whether GM's conduct violates the laws as set forth in the causes of action.

34. **Typicality** – The claims of the representative Plaintiff are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

35. **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

36. **Predominance and Superiority** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual

-15-

1   issues of the case.  Individualized litigation also presents a potential for inconsistent or

2   contradictory judgments.  By contrast, the class action device presents far fewer

3   management difficulties; allows the hearing of claims which might otherwise go

4   unaddressed because of the relative expense of bringing individual lawsuits; and provides

5   the benefits of single adjudication, economies of scale, and comprehensive supervision

6   by a single court.

7        37.    The Class Plaintiff contemplates the eventual issuance of notice to the

8   proposed Class members setting forth the subject and nature of the instant action.  Upon

9   information and belief, Defendant's own business records and electronic media can be

10  utilized for the contemplated notices.  To the extent that any further notices may be

11  required, the Class Plaintiff would contemplate the use of additional media and/or

12  mailings.

13       38.    In addition to meeting the statutory prerequisites to a Class Action, this

14  action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal

15  Rules of Civil Procedure, in that:

16            a.      Without class certification and determination of declaratory,

17  injunctive, statutory and other legal questions within the class format, prosecution of

18  separate actions by individual members of the Class will create the risk of:

19                 i.      Inconsistent or varying adjudications with respect to individual

20  members of the Class which would establish incompatible standards of conduct for the

21  parties opposing the Class; or

22                 ii.     Adjudication with respect to individual members of the Class

23  which would as a practical matter be dispositive of the interests of the other members not

24  parties to the adjudication or substantially impair or impede their ability to protect their

25  interests;

26            b.  The parties opposing the Class have acted or refused to act on grounds

27  generally applicable to each member of the Class, thereby making appropriate final

28  injunctive or corresponding declaratory relief with respect to the Class as a whole; or

-16-

1    c.  Common questions of law and fact exist as to the members of the Class

2  and predominate over any questions affecting only individual members, and a Class

3  Action is superior to other available methods of the fair and efficient adjudication of the

4  controversy, including consideration of:

5    i.    The interests of the members of the Class in individually

6  controlling the prosecution or defense of separate actions;

7    ii.    The extent and nature of any litigation concerning controversy

8  already commenced by or against members of the Class;

9    iii.    The desirability or undesirability of concentrating the litigation

10  of the claims in the particular forum;

11    iv.    The difficulties likely to be encountered in the management of a

12  Class Action.

13  **FIRST CAUSE OF ACTION**

14  **(Violation of California Business & Professions Code Sections 17200, *et seq.* –**

15  **Unfair Business Practices Act)**

16    39.    Plaintiff incorporates by reference and realleges all paragraphs previously

17  alleged herein.

18    40.    The Unfair Business Practices Act defines unfair business competition to

19  include any "unfair," "unlawful," or "fraudulent" business act or practice.  The Act also

20  provides for injunctive relief, restitution, and disgorgement of profits for violations.

21    41.    Defendant's unlawful, unfair, and fraudulent business acts and practices are

22  described throughout this Complaint and include, but are not limited to, falsely

23  advertising the expected gas mileage of the subject vehicles, falsely advertising the

24  expected range on a single tank of gas, and failing to disclose that the advertised expected

25  mileage is unachievable and differs materially from real life highway performance.

26    42.    In addition to the above, the conduct as alleged throughout the complaint

27  constitutes a violation of False Advertising Laws (Cal. Bus. & Prof. Code § 17500, *et*

28  *seq.*), the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), statutory

-17-

1   Deceit (Cal. Civ. Code § 1710), and fraud and negligent misrepresentation that not only

2   results in liability as individual causes of action, but also provides a basis for a finding of

3   liability under California Business and Professions Code § 17200, *et seq.*

4         43.    Furthermore, Defendant's practices violate the declared legislative policies

5   as set forth by the federal government in 40 C.F.R. § 600.307(a)(ii)(A).

6         44.    Plaintiff and the Class members, and each of them, have been damaged by

7   said practices.  Pursuant to California Business and Professions Code §§ 17200 and

8   17203, Plaintiff, on behalf of himself and all others similarly situated, seeks relief as

9   prayed for below.

10   **SECOND CAUSE OF ACTION**

11   **(Violation of California Business & Professions Code Sections 17500, *et seq.* –**

12   **False Advertising Laws)**

13         45.    Plaintiff incorporates by reference and realleges all paragraphs previously

14   alleged herein.

15         46.    Defendant disseminated advertisements in print, online, and television

16   formats contained materially misleading and deceptive information and omitted material

17   information, as discussed throughout the Complaint, for purposes of inducing customers

18   to purchase the subject vehicles, in violation of California Business and Professions Code

19   § 17500, *et seq.*

20         47.    Plaintiff and the Class, and each of them, have been damaged by said

21   practice and seek relief as prayed for below.

22   **THIRD CAUSE OF ACTION**

23   **(Violation of California Civil Code Section 1750 *et seq.* –**

24   **Consumer Legal Remedies Act)**

25         48.    Plaintiff incorporates by reference and realleges all paragraphs previously

26   alleged herein.

27         49.    The following definitions come within the meaning of the Consumer Legal

28   Remedies Act (Cal. Civ. Code § 1750, *et seq.*):

-18-

a.  The members of the Class, all of whom purchased the subject vehicle manufactured and sold by GM are "consumers," (Cal. Civ. Code § 1761(d));

b.  Defendant GM is a "person," (Cal. Civ. Code § 1761(c));

c.  Plaintiff's and each and every Class members' purchase of the subject vehicle constitute a "transaction," (Cal. Civ. Code § 1761(e)); and

d.  The subject vehicles are "goods," (Cal. Civ. Code § 1761 (a)).

50.  The acts and practices of Defendant as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as enumerated in section 1770(a) of the California Civil Code.

51.  Such misconduct materially affected the purchasing decisions of Plaintiff and the members of the Classes.

52.  Plaintiff seeks restitution and injunctive relief pursuant to California Civil Code § 1780.

53.  On or about August 9, 2011, Plaintiff notified Defendant of the unlawful acts and practices described above by written notice which contained a demand that Defendant pay damages in the amount of the reimbursement cost for Plaintiff and all other purchasers of the purchase price of the subject vehicles.  A copy of Plaintiff's "Notice of Intent to Bring an Action for Damages Under the Consumer Legal Remedies Act" is attached as Exhibit "5" and is incorporated by reference.

54.  Pursuant to California Civil Code section 1782(b), Defendant was required to respond to Plaintiff's notice and demand letter within 30 days of its receipt by either correcting, repairing, replacing, or rectifying the violation set forth in the notice and demand or by agreeing to correct, repair, replace, or rectify the violation within a reasonable time.  Defendant failed to respond to Plaintiff's notice and demand.

55.  As a result of the California Civil Code section 1770 violations described above, Plaintiff and each and every member of the Class have suffered actual damages.

-19-

56.   Plaintiff seeks actual damages and restitution pursuant to California Civil Code section 1780.

57.   Furthermore, Defendant acted with oppression, fraud, and/or malice in engaging in the California Civil Code section 1770 violations described above. As a result, Plaintiff is entitled to punitive damages, pursuant to California Civil Code section 1780.

### FOURTH CAUSE OF ACTION

### (Fraud)

58.   Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

59.   The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiff and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended by Defendant to mislead Plaintiff and the members of the Class.

60.   Plaintiff and the Class were actually misled and deceived and were induced by Defendant to purchase the subject vehicles which they would not otherwise have purchased.

61.   As a result of the conduct of Defendant, Plaintiff and the Class members have been damaged. In addition to such damages, Plaintiff seeks punitive or exemplary damages pursuant to California Civil Code § 3294 in that Defendant engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

### FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

62.   Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

63.     Defendant had a duty to provide honest and accurate information to its customers so that customers can make informed decisions on the substantial purchase of automobiles.

64.     Defendant specifically and expressly misrepresented material facts to Plaintiff and Class members, as discussed above.

65.     Defendant knew or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by Defendant's misleading and deceptive advertisements.

66.     Plaintiff and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

## SIXTH CAUSE OF ACTION

### (California Civil Code § 1710 - Deceit)

67.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

68.     Based on Defendant's conduct as discussed above, Defendant has engaged in fraud and deceit as set forth in California Civil Code § 1710.  Plaintiff and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, demands judgment against and general and special relief from Defendant as follows:

1.     An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiff and his counsel of record to represent the defined Class;

2.     An order enjoining Defendant under California Business and Professions Code §§ 17203 and 17535 and California Civil Code §§ 1780 and 1781:

a. To rescind the sales of subject vehicles purchased in California and/or reimburse Plaintiff and the Class members for the purchase price for those

-21-

1   subject vehicles as restitution of all funds improperly obtained by
2   Defendant as a result of such acts and practices declared by this Court to
3   be unlawful, fraudulent, or an unfair business act or practice, a violation
4   of laws, statutes, or regulations, or constituting unfair competition;

5       b. To disgorge all profits and compensation improperly obtained by
6   Defendant as a result of such acts and practices declared by this Court to
7   be unlawful, fraudulent, or an unfair business act or practice, a violation
8   of laws, statutes, or regulations, or constituting unfair competition; and

9       c. To cease engaging in false advertising and to disseminate an informational
10   campaign to correct its misrepresentations and material omissions.

11       3.   For damages under the causes of action for violation of the Consumer Legal
12   Remedies Act, fraud, negligent misrepresentation and statutory Deceit;

13       4.   For punitive damages, pursuant to California Civil Code § 3294 and
14   1780(a)(4);

15       5.   For reasonable attorney's fees and costs, pursuant to California Code of
16   Civil Procedure § 1021.5, California Civil Code § 1780(d), and other statutes as may be
17   applicable;

18       6.   For prejudgment interest to the extent allowed by law;

19       7.   For costs of suit incurred herein;

20       8.   For such other and further relief as the Court deems appropriate.

21   DATED: October 28, 2011.                    MCCUNEWRIGHT, LLP

22

23                                              BY: _____

24                                              Richard D. McCune

25                                              Attorneys for Plaintiff and the

26                                              Putative Class

27

28

-22-

**EXHIBIT 1**

EFFICIENCY, STYLING AND FLEXIBILITY

# GOING THE EXTRA MILE TO MAKE THE MOST OUT OF EVERY INCH.

Every inch of Terrain challenges the notion of what an SUV can be. It has the best highway fuel economy in its class[1] at 32 highway miles per gallon, and fits into smaller garages and tighter parking spaces with ease. Terrain also rewards you with big-SUV comfort, professional-grade capability and bold GMC styling—it's the very definition of efficiency without compromise.

## FIGURE 1: INTELLIGENT PERFORMANCE



HWY
EPA-EST.
MPG

APPROX.
GALLON TANK

UP TO
HWY MILES

Terrain offers class-leading highway fuel economy without sacrificing performance. Equipped with a 2.4L I-4, Terrain offers 32 EPA-estimated highway miles per gallon, and can go up to 600 highway miles on a single tank of gas. At 182 horsepower and 172 lb-ft of torque, the engine delivers responsive power when you need it for a confident driving experience.

## BIG SUV COMFORT

Terrain features the head and leg room of a full-sized SUV. To make the most of available interior space, its clever MultiFlex rear seat slides to create 39.9 inches of class-leading rear leg room, and can even recline for rear passenger comfort. The seatbacks also fold down to create nearly 64 cubic feet of available cargo space.

## BOLD GMC STYLING

Terrain takes a strong stance worthy of its professional-grade heritage—with squared-off corners, flared fenders, a prominent chrome surround grille and projector-beam head-lamps mounted in large, rectangular chrome housings. What you get is plenty of bold styling and a commanding view of the road.

## HELP WHEN YOU NEED IT MOST

Every Terrain offers a six-month trial subscription to OnStar Directions & Connections.[3] Whether you're lost, stranded, involved in a crash or your vehicle's been stolen, an OnStar Advisor is there to get you whatever help you need, 24 hours a day.

[1] EPA-estimated 32 hwy mpg. Based on GM 2010 Compact SUV-Crossover segment.   [2] Cargo and load capacity limited by weight and distribution.
[3] Go to onstar.com for details and system limitations. Services vary with conditions.

**EXHIBIT 2**



32 HWY MPG RATED, AVAILABLE POWER LIFTGATE, SEATING FOR 5 ADULTS. WE PROBABLY HAD YOU AT 32 MPG.

**EXHIBIT 3**

Generated by CamScanner

2011 GMC TERRAIN

WE UNDERSTAND THAT MODERN LIFESTYLES
DEMAND MODERN UTILITY. SO WE USED BIG
THINKING TO DESIGN A SMALLER SUV WITH THE
STANDARD FEATURES, PASSENGER COMFORT
AND GREAT CAPABILITY YOU WOULD EXPECT
IN A FULL-SIZED SUV. AT 32 HIGHWAY MILES PER
GALLON,¹ WE GAVE IT BETTER FUEL ECONOMY
THAN ANY SUV OR CROSSOVER. THIS IS TERRAIN.
WE GAVE IT MORE IDEAS PER SQUARE INCH.
BECAUSE MORE IS WHAT WE DO.

¹EPA estimated.

MORE IDEAS PER SQUARE INCH.



TERRAIN

**EXHIBIT 4**

RICHARD D. McCUNE, Esq., State Bar No. 132124
rdm@mccunewright.com
JAE (EDDIE) K. KIM, Esq., State Bar No.: 236805
jkk@mccunewright.com
McCUNEWRIGHT LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiff and the putative class

| | |
|---|---|
| YUNG KIM, on behalf of himself and all others similarly situated, | NOTICE OF INTENT TO BRING AN ACTION FOR DAMAGES UNDER THE CONSUMER LEGAL REMEDIES ACT (Civil Code Sections 1750-1784) |
| Plaintiffs, | |
| v. | |
| GENERAL MOTORS LLC; and DOES 1 through 10, | |
| Defendants. | |

1. <u>NOTICE SENT TO:</u>

General Motors LLC
Attention: Legal Department
300 Renaissance Ctr.
Detroit, MI 48265

2. <u>ENTITY ALLEGED TO HAVE VIOLATED THE CONSUMER LEGAL REMEDIES ACT (CLRA):</u>

General Motors LLC

3. <u>APPROXIMATE NUMBER OF AFFECTED COSTUMERS:</u>

Precise number unknown, but a substantial number of people as to warrant a class action suit.

4. <u>SPECIFIC SECTION(S) OF CLRA VIOLATED.:</u>

Civil Code § 1770:

(5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a

-1-

CLRA Notice of Intent to Bring an Action for Damages Under the Consumer Legal Remedies Act

**EXHIBIT 5**

1   person has a sponsorship, approval, status, affiliation, or connection which he or she does

2   not have;

3       (7)  Representing that goods are of a particular standard, quality, or grade, or that

4   goods are of a particular style or model, if they are of another; and

5       (9)  Advertising goods or services with intent not to sell them as advertised.

6   5.    FACTS SUPPORTING VIOLATION OF CIVIL CODE § 1770

7       Claimant contends that General Motors LLC ("GM") engaged in widespread

8   misleading and deceptive advertisements throughout California and the United States

9   regarding the real-world gas mileage of its vehicles, including the 2010 and 2011 year

10   models of the GMC Terrain and Chevrolet Equinox (together, "subject vehicles").

11   Specifically, GM asserts misrepresentations and makes material omissions when

12   advertising the EPA gas mileage estimates such as to give the reasonable consumer the

13   understanding that the EPA estimated highway mileage represents the expected mileage

14   achieved through normal, real-world use.  For example, GM advertises in its brochures

15   and online that the Terrain and Equinox can achieve 32 EPA estimated highway mileage,

16   and further misleadingly states that this results in a driving range of 600 miles per tank in

17   real-life driving conditions, when in fact, these vehicles cannot reach a range that is even

18   substantially close to that represented range.  GM's advertisements are further misleading

19   because they fail to include the material disclaimer that actual mileage "will vary," a

20   requirement that is imposed by the EPA for the window sticker label so as to not mislead

21   consumers about *actual* expected mileage.  A reasonable consumer in the current market

22   values fuel economy as highly as any other consideration in purchasing a new car, and

23   would understand such advertisements as representing the expected gas mileage under

24   normal, real-life driving conditions.

25       Claimant purchased a 2011 GMC Terrain on or about January 3, 2011 at the GM

26   dealership in the city of Valencia, CA.  Prior to purchasing the vehicle, he reviewed and

27   relied on several GM advertisements that made the above misleading advertisements

28   concerning the Terrain's high mileage that is achievable when driving his vehicle in

CLRA Notice of Intent to Bring an Action for Damages Under the Consumer Legal Remedies Act

**EXHIBIT 5**

1  normal, real-world conditions.  Had he known that the Terrain in fact achieves a

2  substantially and materially lower gas mileage figure, he would not have purchased the

3  vehicle, and has therefore been damaged.

4      Accordingly, GM's unfair and deceptive practices are in violation of Civil Code §

5  1770(a)(5), (7) and (9).

6  6.   DEMAND

7      Claimant, on behalf of the proposed class, demands that General Motors LLC pay

8  damages in the amount of the reimbursement cost for Claimant and all other purchasers

9  of the purchase price for the subject vehicles.

10

11  DATED: August 8, 2011.                     MCCUNEWRIGHT, LLP

12

13                                   BY: _____

14                                        Richard D. McCune
                                         Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLRA Notice of Intent to Bring an Action for Damages Under the Consumer Legal Remedies Act

**EXHIBIT 5**

1
PROOF OF SERVICE

2
STATE OF CALIFORNIA

3
COUNTY OF SAN BERNARDINO

4

5
     I am employed in the County of San Bernardino, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 2068 Orange Tree Lane, Suite 216, Redlands, California, 92374.

6

7
     On **August 8, 2011**, I served the foregoing document described as **NOTICE OF INTENT TO BRING AN ACTION FOR DAMAGES UNDER THE CONSUMER LEGAL REMEDIES ACT (Civil Code Sections 1750-1784)** on the interested parties through their respective attorneys of record in this action, by placing a ☐ true copy or ☒ original thereof enclosed in sealed envelopes addressed as follows:

8

9

10
     **General Motors LLC**

11
     **Attention:  Legal Department**
     **300 Renaissance Ctr.**

12
     **Detroit, MI 48265**

13

14
**METHOD OF SERVICE:**

15
[ ]  **(BY MAIL)**    I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing.  Under that practice, I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail at Redlands, California.

16

17

18
[ ]  **(BY FACSIMILE)**   I caused such documents to be transmitted by facsimile to the offices of the addressee(s) to the facsimile number(s) listed above.

19

20
[ ]  **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

21

22
[ X ]  **(BY OVERNIGHT DELIVERY)** I caused such document to be delivered by overnight delivery to the offices of the addressee(s).

23

24
     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on the above-referenced date at Redlands, California.

25

26

27
Ann Marie Smith

28

Proof of Service

**EXHIBIT 5**

From: (909) 557-1250          Origin ID: RIVA
Richard D. McCune, Esquire
McCune & Wright, LLP
2068 Orange Tree Lane, Ste. 210

Redlands, CA 92374

Ship Date: 08AUG11
ActWgt: 0.5 LB
CAD: 9533514/NET3180



Delivery Address Bar Code

Ref #     Kim v GM
Invoice #
PO #
Dept #

SHIP TO: (909) 557-1250          BILL SENDER
**Attn: Legal Department**
**General Motors LLC**
**300 RENAISSANCE CTR**

**DETROIT, MI 48243**

TUE - 09 AUG   A1
STANDARD OVERNIGHT

TRK#   7950 5873 9703
0201

48243
MI-US
**XH DTWA**                          DTW

50FG1/EEE7/F5F4

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**Ann Smith**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Tuesday, August 09, 2011 6:13 AM |
| **To:** | Ann Smith |
| **Subject:** | FedEx Shipment 795058739703 Delivered |

This tracking update has been requested by:

Company Name: McCune & Wright, LLP
Name:       Richard D. McCune, Esquire
E-mail:     ams@mccunewright.com

Our records indicate that the following shipment has been delivered:

Reference:            Kim v GM
Ship (P/U) date:      Aug 8, 2011
Delivery date:        Aug 9, 2011 9:11 AM
Sign for by:          C. HURST
Delivery location:    ROMULUS, MI
Delivered to:         FedEx Location
Service type:         FedEx Standard Overnight
Packaging type:       FedEx Envelope
Number of pieces:     1
Weight:               0.50 lb.
Special handling/Services: Hold at FedEx location
Tracking number: 795058739703

Shipper Information              Recipient Information
Richard D. McCune, Esquire       Attn: Legal Department
McCune & Wright, LLP             General Motors LLC
2068 Orange Tree Lane, Ste. 216  300 RENAISSANCE CTR
Redlands                         DETROIT
CA                               MI
US                               US
92374                            48243

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 8:11 AM CDT
on 08/09/2011.
To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.
This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of the
request, the requestor's message, or the accuracy of this tracking update. For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

1

**EXHIBIT 5**