1  | RICHARD D. McCUNE, State Bar No. 132124
   | rdm@mccunewright.com
2  | JAE (EDDIE) K. KIM, State Bar No.: 236805
   | jkk@mccunewright.com
3  | McCUNEWRIGHT LLP
   | 2068 Orange Tree Lane, Suite 216
4  | Redlands, California 92374
   | Telephone: (909) 557-1250
5  | Facsimile: (909) 557-1275

6  | Daniel H. Chang, State Bar No. 183803
   | Larry W. Lee, State Bar No. 228175
7  | DIVERSITY LAW GROUP, A Professional Corporation
   | 444 S. Flower Street, Suite 1370
8  | Los Angeles, CA 90071
   | Telephone: (213) 488-6555
9  | Facsimile: (213) 488-6554

10 | Edward W. Choi, State Bar No. 211334
   | LAW OFFICES OF CHOI & ASSOCIATES
11 | A Professional Corporation
   | 3435 Wilshire Boulevard, Suite 2410
12 | Los Angeles, CA 90010-2006
   | Telephone: (213) 381-1515
13 | Facsimile: (213) 233-4409

14 | Attorneys for Plaintiff and the putative class

15

16 | UNITED STATES DISTRICT COURT

17 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

18

19 | YUNG KIM, on behalf of himself and all
20 | others similarly situated,

21 |                    Plaintiff,

22 |        v.

23 | GENERAL MOTORS LLC; and DOES 1
24 | through 10, inclusive,

25 |                    Defendants.

26

27

28

| Case No.: CV 11-06459 GAF (MRWx)

Honorable Gary Feess
Complaint Filed: August 5, 2011

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Hearing Date: February 27, 2012
Time:         9:30 a.m.
Courtroom:    740

1

**TABLE OF CONTENTS**

2

*Page*

3  TABLE OF AUTHORITIES ....................................................................................ii

4  I     INTRODUCTION .....................................................................................1

5  II    STATEMENT OF FACTS .........................................................................5

6        A.   GM's Misleading Advertisements ..................................................5

7        B.   Plaintiff's Reasonable Reliance on GM's Misleading Advertisements..........7

8        C.   Plaintiff Challenges GM's Omission of Required Disclosures and

9             Affirmative Misrepresentations Regarding Gas Mileage in Its

10            Advertisements, and Does Not Challenge the EPA Standard or Estimates

11            Themselves ......................................................................................9

12 III   ARGUMENT.............................................................................................10

13       A.   Defendants Fail to Meet Their Burden in Seeking Dismissal of the FAC ...10

14       B.   Plaintiff's Claims Are Not Barred by Federal Preemption ...........10

15            1.   Plaintiff's Claims Are Not Barred by Express Federal Preemption...11

16            2.   Plaintiff's Claims Are Not Barred by Express Conflict Preemption..15

17       C.   Plaintiff Sufficiently Alleged That He Justifiably Relied on GM's

18            Deceptive Advertisements.............................................................16

19 IV    CONCLUSION.........................................................................................21

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases** *Page(s)*

*Allis-Chalmers Mfg. Co. v. White Consol. Indus. Inc.*,
  414 F.2d 506 (3d Cir. 1969) ...................................................................20

*Altria Group, Inc. v. Good*,
  555 U.S. 70, 129 S. Ct. 538 (2009) ....................................3, 10, 11, 12

*Associated Gen. Contractors v. Metro Water Dist.*,
  159 F.3d 1178 (9th Cir. 1998) ...............................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .....................................................9

*City Solutions, Inc. v. Clear Channel Communications*,
  365 F.3d 835 (9th Cir. 2004) .................................................................16

*Flores v. Emerich & Fike*,
  No. 05-cv-0291 AWI (DLB), 2008 WL 2489900 (E.D. Cal. June 18, 2008)...........9

*FTC v. Mary Carter Paint Co.*,
  382 U.S. 46, 86 S. Ct. 219 (1965) .........................................................20

*Geoffroy v.Washington Mut. Bank*,
  484 F. Supp. 2d 1115 (S.D. Cal. 2007) ..................................................18

*Gutierrez v. Wells Fargo Bank, N.A.*,
  730 F. Supp. 2d 1080 (N.D. Cal. 2010)..................................................18

*Lazy Y Ranch LTD v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ...................................................................9

*Lirollard Tobacco Co. v. Reilly*,
  533 U.S. 525, 121 S. Ct. 2404 (2001) ...................................................10

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009)..................................................13

*Lumbermens Mutual Casualty Co. v. Rhodes*,
  403 F.2d 2 (10th Cir. 1968) ...................................................................16

*Mendoza v. Zirkle Fruit Co.*,
  301 F.3d 1163 (9th Cir. 2002) ...............................................................10

*Parmer v. National Cash Register Co.*,
  346 F. Supp. 1043 (S.D. OH. 1972) ......................................................16

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218, 67 S. Ct. 1146 (1947) .....................................................10

*Tellabs, Inc. v. Makor Issues and Rights Ltd.*,
  551 U.S. 308, 127 S. Ct. 2499 (2007) ...................................................10

# TABLE OF AUTHORITIES (cont.)

**Federal Cases (cont).**                                                                 *Page(s)*

*True v. American Honda Motor Co., Inc.,*
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ...................................................2, 10, 13, 15

*VP Racing Fuels, Inc. v. General Petroleum Corp.,*
   673 F. Supp. 2d 1073 (E.D.C.A. 2009) ..................................................................14

**State Cases**

*Alliance Mortgage Co. v. Rothwell,*
   10 Cal.4th 1226, 44 Cal. Rptr. 2d 352 (1995) ...................................................16, 17

*Blankenheim v. E.F. Hutton & Co., Inc.,*
   217 Cal. App. 3d 1463, 266 Cal. Rptr. 593 (1990) ..................................................16

*Conservatorship of Link,*
   158 Cal. App. 3d 138, 205 Cal. Rptr. 513 (1984) ....................................................18

*Engalla v. Permanente Med. Croup, Inc.,*
   15 Cal. 4th 951, 64 Cal. Rptr. 2d 843 (1997) .........................................................16

*Gray v. Don Miller & Associates, Inc.,*
   35 Cal. 3d 498, 198 Cal. Rptr. 551 (1984) .............................................................16

*Guido v. Koopman,*
   1 Cal. App. 4th 837, 2 Cal. Rptr. 2d 437 (1991) .....................................................16

*Paduano v. American Honda Motor Co., Inc.,*
   169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90 (2009) .......................................passim

*Seeger v. Odell,*
   18 Cal. 2d 409, 115 P.2d 977 (1941)......................................................................17

**Federal Statutes**

15 U.S.C. § 1334 ...............................................................................................................12

49 U.S.C. § 32908 ........................................................................................................10, 12

49 U.S.C. § 32919 ....................................................................................................passim

49 U.S.C. Chapter 329 .......................................................................................................2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................................1

Cal. Bus. & Prof. Code § 17500 ........................................................................................1

Cal. Civ. Code § 1710........................................................................................................1

Cal. Civ. Code § 1750........................................................................................................1

## TABLE OF AUTHORITIES (cont.)

**Federal Rules**                                                                    *Page(s)*

Fed. R. Civ. P. 12 ...................................................................................................4, 20

 Fed. R. Civ. P. 23 ...........................................................................................................16

**Federal Regulations**

16 C.F.R. § 259.2 .......................................................................................................3, 14

16 C.F.R. Part 259.............................................................................................................2

40 C.F.R. § 600.302-08.................................................................................................3, 14

40 C.F.R. § 600.307-86.....................................................................................................6

# I

## INTRODUCTION

Defendant General Motors LLC ("GM" or "Defendant") has engaged in a pervasive multimedia campaign to falsely advertise the gas mileage of its vehicles, in direct violation of state consumer protection laws.  Plaintiff Yung Kim ("Plaintiff") viewed print advertisements in magazines and brochures regarding the 2011 GMC Terrain, disseminated by GM, which tout a high gas mileage of 32 miles per gallon ("mpg") and represent that the vehicle could travel 600 miles on a single tank based on that mileage, even though the vehicle achieves an actual gas mileage far below the advertised rate.

In any context involving advertisements, representations must be reasonably accurate and not deceptive.  Under this general standard which guides California consumer protection laws, GM's advertisements are unlawful because, simply put, they represent gas mileage figures far higher than what the vehicles actually attain.  The only distinction in the context of vehicle gas mileage that is different than most other contexts, is that Congress and federal regulators have set forth laws and regulations that permit auto manufacturers to advertise mpg ratings estimates derived from strict laboratory standards set by the Environmental Protection Agency ("EPA") which far exceed the actual gas mileage of vehicles in the real world under normal driving conditions and are solely intended to provide consumers with a standardized tool for comparing the fuel economy of different vehicles relative to each other.  It is under this federal law that GM seeks refuge in justifying its advertisement of materially inflated gas mileage.

However, as Congress and regulators are aware of and concerned about the fact that "EPA estimates" cannot be relied upon as an accurate representation of actual gas mileage, they have promulgated laws requiring specific disclaimers be included in such mpg representations in order for consumers to not be deceived by and rely on these inflated numbers when choosing to purchase a vehicle.  Such required disclaimers include the fact that the source of such mpg numbers are the EPA and that the numbers

are estimates (16 C.F.R. § 259.2(a)), and the phrase "actual mileage will vary" (40 C.F.R. § 600.302-08(b)(4)).  Not only are these disclosures required or are consistent with federal laws and regulations, they help provide consumers material information that places the advertised mpg numbers under the appropriate context – that the advertised mpg should *not* be taken as representing actual and expected gas mileage rates and are to be relied upon solely for purposes of comparing different vehicles.

GM, though, has not complied with these disclosure requirements in its advertisements, and therefore, is illegally and deceptively representing EPA estimated gas mileage as actual, expected gas mileage.  In fact, GM further affirmatively misrepresents that the advertised mpg ratings can be attained in the real world under normal performance by advertising that the vehicle can travel 600 miles on a single tank of gas.  GM has every incentive to advertise the EPA's inflated gas mileage ratings to more effectively induce consumers to purchase its vehicles, but if it is going to advertise gas mileage using the EPA estimated numbers, it must do so in compliance with the federal laws and regulations.

Plaintiff reasonably relied on these deceptive advertisements of gas mileage when purchasing his 2011 GMC Terrain and has been damaged by having purchased a vehicle that achieves a substantially and materially lower gas mileage than advertised.  Therefore, Plaintiff brings this action, on behalf of himself and all others similarly situated, based on violation of California's Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, statutory Deceit, Cal. Civ. Code § 1710, as well as common law fraud and negligent misrepresentation.

GM seeks to dismiss Plaintiff's First Amended Complaint ("FAC") on two grounds: 1) that advertisements utilizing mpg that are taken from "EPA mpg estimate" ratings cannot be deceptive; and 2) that any state law requirement for disclosures in advertisements that utilize EPA estimate mpg information are subject to express or

conflict preemption under the Energy Policy and Conservation Act ("EPCA"), 49 U.S.C. Chapter 329, and the Federal Trade Commission's "Guide Concerning Fuel Economy Advertising for New Automobiles" ("FTC Guides"), 16 C.F.R. Part 259.  However, each of GM's assertions are wrong and directly refuted by the two cases most on point, *True v. American Honda Motor Co., Inc.* ("*True*"), 520 F. Supp. 2d 1175 (C.D. Cal. 2007) and *Paduano v. American Honda Motor Co., Inc.* ("*Paduano*"), 169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90 (2009), both of which hold that claims similar to Plaintiffs' are neither preempted nor subject to dismissal as fraud-based claims under California law.[1]

The court in *True* held that the plaintiff's allegation that Honda's failure to adequately include disclaimer that the "actual mileage will vary," in its advertisements of mpg's was not preempted under the EPCA and properly stated a claim under California consumer protection laws.  The court specified that the plaintiff's claims that this disclaimer, which is required to be included in the Monroney Sticker, needs to be adequately disclosed in advertisements pursuant to California consumer protection laws "furthers" – and does not conflict with or stand as an obstacle to – Congressional purpose.

Likewise, the court in *Paduano* held that while a vehicle manufacturer is permitted to advertise EPA estimated fuel economy ratings, the plaintiff's claims that Honda provided additional affirmative representations that were beyond what was called for in the federal regulations and were inaccurate, specifically that the Civic Hybrid could achieve the advertised EPA estimated mileage under normal driving conditions as when driving a conventional car, was not preempted by federal law and was appropriate for adjudication under state law.  Meanwhile, the court dismissed claims regarding inadequate disclosures because, unlike the subject GM advertisements, the fact that the

---

[1] It is, therefore, no surprise that GM raises its arguments relating to *True* and *Paduana* at the very end of its motion (GM Motion, at pp. 20-25) in an obvious attempt to downplay and distinguish the primary cases on the issue, both of which compel the rejection of each of GM's challenges to the FAC.

1   mpg ratings were based on EPA estimates *was* clearly disclosed for each version of the

2   Civic Hybrid.

3      Here, GM erroneously attempts to reframe Plaintiff's claims as challenging the

4   EPA estimates themselves or requiring additional information than what is required under

5   federal law.  To the contrary, Plaintiff challenges GM advertisements which overstate

6   mpg ratings, and then omit or fail to adequately disclose material disclaimers which are

7   required to be disclosed by or consistent with federal law to advise customers of this fact.

8   Plaintiff further challenges GM's advertisements which affirmatively misrepresent the

9   mileage range of the vehicle on a single tank of gas.  This use of EPA estimated mpg is

10  not authorized by federal regulations.  Under *True* and *Paduano*, such claims are viable

11  and not subject to federal preemption.  Just as the court in *Paduano* and *True* repeatedly

12  noted Honda's attempt to misconstrue the plaintiff's claims as challenging the EPA

13  estimates themselves or requiring further burdensome disclosures that are not required

14  under federal law, the Court, here, should also be wary of GM's attempt to assert the

15  same mischaracterization of Plaintiff's claims.

16     In addition to GM's numerous irrelevant arguments which are based on its

17  mischaracterization of Plaintiff's claims, GM also asserts arguments that are wholly

18  factual in nature which lie far beyond the scope of the pleadings and should be examined

19  only after discovery and the building of a factual record for the Court to consider.  These

20  arguments include GM's puzzling assertion that a very specific "google" search result

21  can provide accurate information on EPA estimate ratings that contradict GM's deceptive

22  advertisements, and that the order of "google" search results is a function or cause of

23  widespread consumer knowledge and understanding.  Plaintiff objects to the Court even

24  considering this submission which is nowhere to be found in the four corners of the

25  complaint and is not something of which the Court can take judicial notice.  The

26  introduction of this purported evidence reaches far outside of the FAC, which is

27  inappropriate at the challenge to the pleading stage under Federal Rule of Civil Procedure

28  12 (b)(6), and must not be considered.

-4-

Pl.'s Opp'n to Def.'s Mot. to Dismiss         - Case No.:  CV 11-06459 GAF(MRWx)

1    Plaintiff, therefore, requests that the Court deny GM's motion to dismiss in its

2 entirety.

## II

### STATEMENT OF FACTS

**A.    GM's Misleading Advertisements**

The FAC sets forth the deceptive advertisements upon which Plaintiff relied in purchasing his 2011 GMC Terrain, (FAC at ¶ 11), including the following:

- Page excerpt from 2011 GMC Terrain brochure entitled "Going the Extra Mile to Make the Most Out of every Inch."  (FAC,  Ex. 1 (with an enlarged version of the referenced section of the brochure attached as Ex. 2).)  Defendant states that the Terrain "has the best highway fuel economy in its class at 32 highway miles per gallon" and displays a chart that includes a reference to "UP TO 600 HWY MILES."  Beside this chart is a map which outlines in red a route from Chicago, past Cleveland and Buffalo, to Rochester, New York, which is over 600 miles. The brochure goes on to state that the "Terrain offers class-leading highway fuel economy without sacrificing performance.  Equipped with a 2.4L I-4, Terrain offers 32 EPA-estimated highway miles per gallon, ***and*** can go up to 600 highway miles on a single tank of gas."  (Emphasis added.)

- A General Motors advertisement in Road & Track magazine which states "32 HWY MPG RATED, AVAILABLE POWER LIFTGATE, SEATING FOR 5 ADULTS.  WE PROBABLY HAD YOU AT 32 MPG."  (FAC, Ex. 3.)

- Page excerpt from 2011 GMC Terrain brochure for the 2011 GMC Terrain stating, "AT 32 HIGHWAY MILES PER GALLON, WE GAVE IT BETTER FUEL ECOMONY THAN ANY SUV OR CROSSOVER", with a fine print footnote stating "EPA estimated."  (FAC, Ex. 4.)

The reasons that these advertisements are deceiving, as alleged in the FAC, include the fact that this vehicle does not, in fact, achieve the advertised gas mileage.  GM's advertisements made to Plaintiff and the putative class members were false, as the

-5-

Terrain does not travel 600 miles on one tank of gas or attain an average 32 miles per gallon throughout those 600 miles under normal highway driving conditions.  (FAC at ¶ 15.)

Defendant is not protected by the fact that they use mileage borrowed from EPA testing in these advertisements by virtue of the fact that it did not include EPA mandated disclosures on the limitations of the EPA testing results to predict real world results.  The EPA acknowledges the discrepancy between EPA estimates and actual performance in its website by stating the rating "may not accurately predict the average MPG you will get," and by requiring that auto-manufacturers place window stickers on new models with the EPA city and highway estimates printed on them that include as a significant, material disclosure the words, "[a]ctual mileage *will vary*," pursuant to 40 C.F.R. § 600.307-86(a)(ii)(A).  (Emphasis added.)  (FAC at ¶ 23.)

Plaintiff has experienced significantly lower mpg than advertised, even with attempting conservative driving far beyond what is normal driving.  Plaintiff is of course not alone.  The severe discrepancy in the EPA estimates and actual performance of the GMC Terrain have been well documented in a 2011 expert review published in the respected industry website "Edmunds.com," noting that the GMC Terrain's "[e]stimated fuel stands at 22 mpg city/32 mpg highway and 26 mpg combined . . . .  These numbers are impressive, but after extensive testing, we have failed to see such thriftiness from the four-cylinder Terrain – especially on the highway."  The same discrepancy has also been discovered with respect to the GMC Terrain's twin, the Chevrolet Equinox, a discrepancy that was the subject of a recent investigative piece published in the Los Angeles Times on August 2, 2011.  (FAC at ¶ 24.)  However, the above advertised statements fail to adequately disclose the material disclaimers that mileage will vary and that the EPA estimates are to be used for comparing vehicles, but is not the expected gas mileage of the vehicles under real world operating conditions.

//

//

**B.    Plaintiff's Reasonable Reliance on GM's Misleading Advertisements**

The FAC alleges that Plaintiff fell victim to these false advertisements when he purchased a 2011 GMC Terrain based on advertisements that it would experience 32 miles per gallon in highway use and will travel 600 miles on a single tank of gas, when, in fact, these vehicles attain substantially and materially lower gas mileage under real world driving conditions, do not get 32 miles per gallon, and will not travel 600 miles on a single tank of gas under normal highway use.  (FAC at ¶¶ 4-5.)  Plaintiff purchased a new 2011 GMC Terrain crossover vehicle on or about January 3, 2011.  Plaintiff and his wife were expecting their first child and needed a larger vehicle for their family.  In addition, Plaintiff and his wife, who worked outside the home, had decided that his wife would stay home with their baby.  As a result of the consequent loss of income, the total cost of the vehicle they were purchasing was extremely important to Plaintiff.  One of the most important components of the total cost of the vehicle was the gas mileage, as Plaintiff was intending to put a substantial number of miles on the vehicle each year.  (*Id.* at ¶ 9.)

Plaintiff shopped for an extended period before buying the vehicle, and visited dealerships and reviewed GM brochures, website, television commercials, and print advertisement in magazines, including Motor Trend, Wired, and Road & Track.  From viewing these advertisements and representations, including the ones set forth above, Plaintiff was very impressed with the high gas mileage that these materials advertised the Terrain would achieve and was led to believe that the high gas mileage would be reflective of what he would experience during normal, real-world highway use.  (*Id.* at ¶¶ 10-11.)

Based on these representations, Mr. Kim reasonably believed that the Terrain would achieve approximately 32 miles per gallon and travel 600 miles on a single tank of gas during normal, real-world highway use.  Furthermore, none of these advertisements provided any disclaimer that the actual gas mileage under normal, real world driving conditions would actually and substantially vary from the advertised gas mileage and

travel range of a tank of gas.  Plaintiff heavily relied on these representations when he decided to buy the 2011 GMC Terrain.  His wife did not want to buy the vehicle as she favored other vehicles.  Plaintiff provided her with the brochure and advertisements about the fuel mileage to convince her to purchase the vehicle, and without the representations in the advertisements about the mileage per gallon and travel range of the vehicle on a single tank of gas, Plaintiff would not have purchased the vehicle.  (*Id.* at ¶¶ 12-13.)

However, after purchasing the vehicle, Plaintiff discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use.  Plaintiff took the vehicle to the GM dealership on multiple occasions but was not provided any assistance in the matter and was told by the dealership that there was nothing they could do to help him achieve higher gas mileage.  (*Id.* at ¶ 14.)  Had it been disclosed to Plaintiff that GM's advertisements of the Terrain's expected gas mileage under normal highway conditions were inflated compared to the actual performance of the vehicle he purchased, than he would not have purchased the 2011 GMC Terrain, and has therefore been damaged.  (*Id.* at ¶ 15.)

GM, like all major auto-manufacturers, has realized the extent to which modern consumers highly value fuel-efficiency as a result of the prolonged spike in gas prices and the nationwide recession.  Based on information and belief, most consumers consider high fuel economy important and a substantial factor in their purchasing decisions for new vehicles.  Customers' strong preference for more fuel-efficient vehicles is based on the fact that these vehicles provide greater savings for consumer budgets.  (*Id.* at ¶ 18.)

As Defendant and its marketing people would reasonably expect, Plaintiff and the putative class reasonably relied on GM's material false representations regarding the miles per gallon during normal, real world highway use of its vehicles.  A reasonable consumer would expect a vehicle advertised as attaining an advertised miles per gallon under real world highway use would actually perform as such.  Furthermore, a reasonable consumer in today's market attaches material importance to advertisements of high gas

mileage, as fuel efficiency is one of the most, if not *the* most, important considerations in making purchasing decisions for most consumers.  (*Id.* at ¶ 27.)

### C.  Plaintiff Challenges GM's Omission of Required Disclosures and Affirmative Misrepresentations Regarding Gas Mileage in Its Advertisements, and Does Not Challenge the EPA Standard or Estimates Themselves

Plaintiff challenges the pervasive false advertisements disseminated by GM regarding the expected gas mileage of its vehicle models.  In attempting to exploit the increasingly strong consumer market preference for high gas mileage vehicles, GM advertises expected gas mileage and vehicle range on a single tank of gas, without disclosing, or at best inadequately disclosing, that the mileage is not an estimate of real world mileage because the estimate is based on an EPA standard.  (*Id.* at ¶ 3.)

However, Plaintiff does not challenge the EPA figures for the subject vehicles or the manner in which those figures were calculated, subject to confirmation that the EPA estimates for these vehicles were the result of the EPA-approved testing conditions. Instead, Plaintiff challenges GM's systematic advertising scheme that misleadingly and unfairly uses the EPA mileage numbers to represent and imply that the miles per gallon highway EPA estimate reflects actual, expected mileage under normal, real world driving conditions; something which the EPA itself does not contend to be true.  (*Id.* at ¶ 25.)

Defendant's unlawful, unfair, and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to, falsely advertising the expected gas mileage of the subject vehicles, falsely advertising the expected range on a single tank of gas, and failing to disclose that the advertised expected mileage is unachievable and differs materially from real life highway performance.  (*Id.* at ¶ 41.)  These allegations are the basis of each of Plaintiff's causes of action, as set forth in the FAC:  UCL (*id.* at ¶¶ 39-44); FAL (*id.* at ¶¶ 45-47); CLRA (*id.* at ¶¶ 48-57); Fraud (*id.* at ¶¶ 58-61); Negligent Misrepresentation (*id.* at ¶¶ 62-66); and statutory Deceit (*id.* at ¶¶ 67-68).

# III

# ARGUMENT

## A.    GM Fails to Meet Its Burden in Seeking Dismissal of the FAC

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss for failure to state a claim, the plaintiff must allege enough facts to state a claim to relief that is plausible on its face."  *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quotation omitted) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  A complaint should only be dismissed if "a plaintiff fails to nudge his or her claims across the line from conceivable to plausible."  *Flores v. Emerich & Fike*, No. 05-cv-0291 AWI (DLB), 2008 WL 2489900 (E.D. Cal. June 18, 2008).

In considering a motion to dismiss, "courts must consider the complaint in its entirety," and read it in the light most favorable to plaintiffs, accepting as true all factual allegations in the complaint, as well as reasonable inferences drawn therefrom.  *Tellabs, Inc. v. Makor Issues and Rights Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); *see also Associated Gen. Contractors v. Metro Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998).  The Court should deal only with the complaint's allegations and not substitute the defendant's conjured speculation about allegations of causation.  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002).

Here, the allegations of the FAC establish that Plaintiff's fraud-based claims under state law are viable and not subject to federal preemption.

## B.    Plaintiff's Claims Are Not Barred by Federal Preemption

When determining whether federal preemption exists, the "ultimate touchstone" inquiry is whether Congress intended the federal regulation to supersede state law.  *Altria v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538 (2008).  The analysis begins "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Id.* (quoting

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146 (1947)). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Id.* (internal quotation marks and citation omitted).

The Supreme Court recognized the field of advertising and regulation of unfair business practices as falling under traditional state regulation. *Lirollard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S. Ct. 2404 (2001). Thus, "the Court's inquiry begins with a presumption against preemption" in determining if the plaintiff's state law claims are barred by the EPCA. *True*, 520 F. Supp. 2d at 1180.

The EPCA preemption clause at issue here provides that a state "may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs . . . only if the law or regulation is identical to [the federal requirement under 49 U.S.C. § 32908]." 49 U.S.C. § 32919(b). GM mischaracterizes Plaintiff's claims as requiring GM to provide additional information in its advertisements regarding the EPA estimates that it advertises, namely that the EPA estimated mpg differs from real world fuel economy. (GM Motion at p.23.) Thus, GM argues, the state law invoked by Plaintiff would not provide "identical" standards as the EPCA, and is therefore preempted.

However, the crux of Plaintiff's claims is in challenging GM advertisements that are false and misleading, and which omit or fail to adequately disclose material disclaimers that are required to be disclosed by, and are consistent with, federal law. These advertisements also affirmatively misrepresent material facts by overstating vehicle range based on , which is not a sanctioned use of the EPA estimates under federal law. (*See* FAC ¶¶ 3, 25, 41.) Based on the appropriate analysis of federal preemption and the rulings of relevant authority, GM's arguments cannot overcome the presumption against preemption.

### 1.     Plaintiff's Claims Are Not Barred by Express Federal Preemption

The court in *Paduano* held that while a vehicle manufacturer is permitted to advertise EPA estimated fuel economy ratings, the plaintiff's showing that Honda provided additional affirmative misrepresentations regarding expected real world driving

1  was above and beyond what is required by the EPCA and FTC Guides  and was not

2  preempted by federal law.  169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90.  Just as the

3  *Paduano* court held, 49 USC §32919 does not preempt Plaintiff's similar

4  misrepresentation claims.  *See Paduano,* 169 Cal. App. 4th at 1477-78 (relying on *Altria*

5  *Group, Inc. v. Good*, 555 U.S. 70, 129 S. Ct. 538 (2008)).

6       In *Altria*, the Supreme Court concluded that the Federal Cigarette Labeling and

7  Advertising Act ("Labeling Act"), which contains a similar preemption clause as the

8  Energy Policy and Conservation Act that is at issue here, does not preempt claims by the

9  plaintiffs that the cigarette manufacturer's advertising of certain cigarettes as "light" and

10  as providing "lowered tar and nicotine" constituted fraudulent advertising under the

11  Maine Unfair Trade Practices Act ("MUTPA").  The Labeling Act's express preemption

12  clause provides that "[n]o requirement or prohibition *based on* smoking and health shall

13  be imposed under State law with respect to the advertising or promotion of any cigarettes

14  on the packages of which are labeled in conformity with the provisions of this chapter."

15  15 U.S.C. § 1334(b) (emphasis added).  In interpreting this preemption provision, the

16  Supreme Court noted that the text of the preemption clause does not refer to *harms*

17  related to smoking and health, but rather preempts only "requirements and prohibitions"

18  that are based on smoking and health, and MUTPA says nothing about either "smoking"

19  or "health," and is instead a "general rule that creates a duty not to deceive."  *Altria*, 555

20  U.S. at 84, 129 S. Ct. 538.  The preemption clause "does not encompass the more general

21  duty not to make fraudulent statements."  *Id.* at 87.

22       The EPCA preemption clause at issue here provides that a state "may adopt or

23  enforce a law or regulation *on* disclosure of fuel economy or fuel operating costs . . . only

24  if the law or regulation is identical to [the federal requirement under 49 U.S.C. § 32908]."

25  49 U.S.C. § 32919(b)[2] (emphasis added).  The court in *Paduano* noted that the word "on"

26

27  ───────────────────

28  [2] The court in *Paduano* also dismissed Honda's argument that the plaintiff's claims were
    preempted by 49 U.S.C. § 32919(a) because disclosure regulations do not relate to

in the EPCA preemption clause "is the functional equivalent" of the words "based on" in the Labeling Act's preemption clause at issue in *Altria*.  69 Cal. App. 4th at 1478.  However, the plaintiff's affirmative misrepresentation claims were not based on challenging the EPA estimates themselves, and therefore existed outside the scope of the express preemption clause of the EPCA:

> Contrary to Honda's characterization of [the plaintiff's] UCL and CLRA claims, [the plaintiff] is not claiming that disclosing the EPA mileage estimates is, by itself, deceptive.  Rather, [the plaintiff] maintains that Honda has voluntarily made additional assertions, *beyond* the disclosure of the mileage estimates, that are untrue or misleading, and that federal law does not require, or even address, these additional assertions.

*Id.* at 1477[3].  Furthermore, the *Paduano* court ruled that:

> Here, neither the UCL nor the CLRA are both laws of general application that create a duty not to deceive, just like the MUTPA.  Thus, the phrase "on disclosure of fuel economy or fuel operating costs," like the language of the Labeling Act addressed in *Atria Group*, cannot be construed to encompass the general duty not to make fraudulent or misleading statements.

*Id.*  Therefore, the court ruled that the plaintiff's claim that Honda affirmatively misrepresented material facts that the Civic Hybrid can be driven under normal conditions as one would drive a conventional car was not preempted.

---

regulating EPA "standards."  69 Cal. App. 4th at 1475-76.  At any rate, GM does not raise an argument for preemption under subsection (a) of the preemption clause.

[3] *See also Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) (the express preemption clause of the Nutrition Labeling and Education Act, which preempts state regulations regarding the failure to mention in food labels the presence of artificial flavoring, artificial coloring, or chemical preservatives that are not identical to the federal requirements, did not preempt the plaintiff's challenge of the advertisement of "all natural" when high fructose corn syrup was included in the ingredients because the plaintiff was not alleging that artificial flavoring, coloring or a chemical preservative was present.)

The affirmative misrepresentations alleged in *Paduano* are analogous to the ones alleged here, namely, that the GMC Terrain can travel 600 miles on one tank when driving from Chicago to Buffalo without sacrificing normal, real world performance. The voluntary affirmative misrepresentations in both cases involve deceptive statements that go beyond any disclosure requirement mandated by federal law and regulation. Furthermore, Plaintiff's claims are brought under the same state consumer protection laws of general applicability as in *Paduano*, in addition to the generally applicable common law claims of fraud and negligent misrepresentation.

Furthermore, in *True,* express preemption failed to bar the plaintiff's claims that Honda failed to adequately disclose "actual mileage will vary." 520 F. Supp. 2d at 1181 ("Nothing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these stickers and booklets."); *see Paduano*, 169 Cal. App. 4th at 1482 (acknowledging that the *True* court considered the express preemption clause before rejecting Honda's assertion that federal preemption bars the plaintiff's claims). Here, Plaintiff makes similar challenges to GM's advertisements, which omit or fail to adequately disclose material disclaimers that are required to be disclosed by, or are consistent with, federal law, including: 1) the fact that the EPA is the source of the ratings and the numbers are "estimates" (16 C.F.R. § 259.2(a)); and 2) the term "actual mileage will vary" (40 C.F.R. § 600.302-08(b)(4)). Just as the court held in *True*, such disclosure claims are not preempted. Furthermore, as such disclosures are required, Plaintiff's claims would be "identical" to the EPCA and FTC disclosure rules and regulations and therefore are not preempted under the express preemption clause. *See VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073, 1081 (E.D.C.A. 2009) (where the plaintiff seeks to enforce a claim under the UCL that is identical to federal regulations, such claim is not barred by express preemption, and the plaintiff may proceed under the UCL even if the federal statute does not provide for a private cause of action).

Therefore, Plaintiffs' claims are not barred by the operation of express preemption.

## 2. Plaintiff's Claims Are Not Barred by Express Conflict Preemption

The court in *True* held that the plaintiff's claim regarding inadequate disclosure of the disclaimer "actual mileage will vary" was not barred by the operation of conflict preemption.  The court specified that the plaintiffs' claims were not subject to conflict preemption because with respect to disclosures, the EPCA's express preemption clause (49 U.S.C. § 32919) only preempts state laws regarding disclosures of fuel economy that are different than the requirements of the "Monroney" point-of-sale sticker disclosures and to make a booklet available containing comparative fuel efficiency ratings.  Thus, the court held that Congress did not intend to preempt areas outside of these two requirements and that "[i]t would be an unreasonable assumption, however, that Congress intended to preempt states from regulating false or misleading advertising of a vehicle's fuel efficiency and cost savings." *True*, 520 F. Supp. 2d at 1181.  The court further held that the plaintiff's claims that the disclaimer "actual mileage will vary," which is required to be included in the Monroney Sticker, needs to be adequately disclosed in advertisements pursuant to California consumer protection laws, in any event, "furthers" – and does not conflict with or stand as an obstacle to – Congressional purpose. *Id.*

The court in *Paduano* fully agreed with the *True* decision regarding conflict preemption, stating that:

> As long as a state's regulation does not require a manufacturer to provide a fuel estimate different from the EPA fuel economy estimate, or to make claims that go beyond, or are contrary to, what the federal scheme requires, the EPCA does not preempt such regulation.  We agree with the *True* court that allowing states to regulate false advertising and unfair business practices may further the goals of the EPCA, and reject Honda's claim that California's regulation of deceptive advertising somehow acts as an "obstacle to the accomplishment and execution of the full purpose and objectives of Congress." [Citation.]

169 Cal. App. 4th at 1482.

As Plaintiff's inadequate disclosure claims based on the EPCA and FTC Guides requirements are similar to claims at issue in *True*, and Plaintiff's affirmative

-15-

misrepresentation claims are analogous to the claims at issue in *Paduano*, the rulings of both of those courts that conflict preemption does not bar such claims, provides compelling guidance on the preemption issues in the case at hand.  Therefore, Plaintiff submits that none of his claims are barred by federal preemption.

## C. Plaintiff Sufficiently Alleged That He Justifiably Relied on GM's Deceptive Advertisements

GM's only challenge to the elements of Plaintiff's causes of action relate solely to reliance.  (GM Motion at pp. 13-20.)  However, Plaintiff has sufficiently alleged reasonable and justifiable reliance in the FAC,[4] and GM's arguments are entirely based on facts lying outside of the FAC and beyond the scope of a motion to dismiss.

The California Supreme Court has explained that "[r]eliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239, 44 Cal. Rptr. 2d 352 (1995).  Under the UCL and CLRA, one need only show that "members of the public are likely to be deceived." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267, 10 Cal. Rptr. 2d 538 (1992).  Under California law, it is not necessary that a plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct; it is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision. *City Solutions, Inc. v. Clear Channel*

---

[4] GM asserts in a footnote that Plaintiff fails to allege with particularity similar deceptive advertisements for other GM models (GM Motion at p. 20 n.9), but this goes to the class certification issue of commonality, and a motion to dismiss does not lie on the ground that a purported class action fails to meet the prerequisites of Federal Rule of Civil Procedure 23.  (*See Lumbermens Mutual Casualty Co. v. Rhodes*, 403 F.2d 2, 6 (10th Cir. 1968); *see also Parmer v. National Cash Register Co.*, 346 F. Supp. 1043, 1047 (S.D. OH. 1972).)

-16-

1   *Communications*, 365 F.3d 835, 840 (9th Cir. 2004) (*citing Engalla v. Permanente Med.*

2   *Croup, Inc.*, 15 Cal. 4th 951, 976-77, 64 Cal. Rptr. 2d 843 (1997)).

3          The California Supreme Court, in *Alliance*, also established that "[e]xcept in the

4   rare case where the undisputed facts leave no room for a reasonable difference of

5   opinion, the question of whether a plaintiff's reliance is reasonable is a *question of fact.*"

6   10 Cal.4th at 1239 (*quoting Blankenheim v. E.F. Hutton & Co., Inc.*, 217 Cal. App. 3d

7   1463, 1475, 266 Cal. Rptr. 593 (1990)); *Gray v. Don Miller & Associates, Inc.*, 35 Cal.

8   3d 498, 503, 198 Cal. Rptr. 551 (1984) ("[w]hether reliance is justified is a question of

9   fact"); *Guido v. Koopman*, 1 Cal. App. 4th 837, 843, 2 Cal. Rptr. 2d 437 (1991) ("the

10  reasonableness of the reliance is ordinarily a question of fact").

11         Negligence on the part of the plaintiff in failing to discover the falsity of a

12  statement is no defense when the misrepresentation was intentional rather than negligent.

13  *Alliance,* 10 Cal. 4th at 1239-40 (*quoting Seeger v. Odell, supra,* 18 Cal. 2d 409, 414, 115

14  P.2d 977 (1941)).  Nor is a plaintiff held to the standard of precaution or of minimum

15  knowledge of a hypothetical, reasonable man.  *Id.*

16         Here, Plaintiff alleged with particularity facts regarding his reasonable reliance on

17  GM's deceptive advertisements.  Specifically, he alleged that the advertisements did not

18  disclose that the advertised mpg rates were EPA estimates and that the actual mileage

19  would substantially vary, and affirmatively misrepresented that the vehicle could traverse

20  600 miles across the country on a single tank of gas.  As material disclaimers which are

21  mandated by federal law and regulation which provide the proper context for the

22  advertised mpg rates were not disclosed and affirmative misrepresentations were given

23  touting extreme – and erroneous – fuel-efficiency in the real world without sacrificing

24  normal performance, the vehicle appeared to be the smart buy for Plaintiff, who was

25  expecting a child and whose wife would need to quit her job to stay home and take care

26  of the newborn.  Plaintiff relied on these advertisements when purchasing the Terrain, but

27  has since discovered that the vehicle attains a materially lower gas mileage than

28  advertised.  Plaintiff alleges that he would not have purchased the vehicle if the proper

-17-

disclaimers were given and affirmative misrepresentations were not present in the advertisement, which gave the strong, reasonable impression that the mpg rate advertised would be the rate he could expect to attain.

Further, the FAC alleges that even the EPA acknowledged its concern about the deceptive nature of the EPA estimates and that publications by industry experts have expressed concerns that GM's crossover vehicles achieve a substantially lower gas mileage than advertised. Thus, it is more than reasonable for Plaintiff and other consumers to be misled regarding GM's advertisements of gas mileage.

Not only has Plaintiff pled reasonable reliance with particularity, it is ultimately a question of fact that cannot be determined at the motion to dismiss stage. This conclusion is supported by the decisions in both *True* and *Paduano*. In *True*, the plaintiff alleged that Honda failed to include the disclaimer "actual mileage will vary," or instead included a watered-down version "actual mileage *may* vary." The court held that the plaintiff's allegations, which along with inferences to be drawn therefrom are to be considered true, that Honda communicated misleading or deceptive advertisements to the plaintiff which failed to adequately disclose the term "actual mileage will vary," and that the ads were "a substantial factor, if not the controlling factor, in inducing" the plaintiff to purchase the Civic Hybrid, adequately alleged the reliance element of his fraud-based claims. 520 F. Supp. 2d at 1183. Meanwhile, in *Paduano*, the court dismissed claims regarding inadequate disclosures because, unlike the subject GM advertisements, noting the fact that the mpg ratings based on EPA estimates *was* clearly disclosed for each version of the Civic Hybrid. *Paduano*, 169 Cal. App. 4th at 1470. Here, Plaintiff's inadequate disclosure claims are similar to such claims in *True* as they are based on the failure to disclose material and required disclosures, and are distinguishable from such claims in *Paduano*, where disclosures were clearly provided.[5] Without such disclosures, GM is simply misrepresenting the actual gas mileage.

---

[5] GM's advertisements entirely omitted the phrase "actual mileage will vary" and either omitted the disclaimer "EPA estimate" entirely or hid this disclaimer in a fine print

1    Likewise, the court in *Paduano* held that with regards to Honda advertisements

2   that the Civic Hybrid could attain the advertised mpg rating when driven normally just as

3   a conventional car, "[a] fact finder could determine" that the additional

4   misrepresentations did violate state law.  169 Cal. App. 4th at 1470.  Thus, at the

5   summary judgment stage, the court ruled that the merits of such affirmative

6   misrepresentation claims are appropriately determined by the fact finder.  Therefore,

7   Plaintiff submits that his analogous affirmative misrepresentation claims are also viable

8   and are questions of fact that are appropriately determined after discovery and ultimately

9   by the finder of fact.

10    With respect to GM's specific arguments, GM makes numerous irrelevant

11   arguments which are based on its mischaracterization of Plaintiff's claims.  Specifically,

12   GM argues that the definition of "estimate" makes it impossible for Plaintiff to prove that

13   a reasonable consumer is likely to be deceived.  (GM Motion at p. 16-18.)  However, this

14   argument erroneously presupposes the fact that the disclaimer "EPA estimate" was

15   adequately disclosed to Plaintiff when it was not; a consumer's understanding of the term

16   "estimate" never comes into play if the advertisement never clearly disclosed that the

17   mpg rates *are* estimates.  In addition, this argument brings into question why GM would

18   even aggressively advertise mpg rates, without disclosures that it is based on EPA

19   estimates, that actual mileage will vary, or that the advertised mpg was solely intended

20

21

22   footnote.  With respect to fine print and obscured inclusion of the required disclaimer
"EPA estimate," courts have held that plaintiffs may have reasonably not seen or
23   understood them.  *See Geoffroy v.Washington Mut. Bank*, 484 F. Supp. 2d 1115, 1120-21
(S.D. Cal. 2007) (arbitration agreement is procedurally unconscionable where the
24   agreement was a contract of adhesion that was misleading and printed in small, dense
prolix print (portions smaller than 6-point font size) that was difficult to read);
25   *Conservatorship of Link*, 158 Cal. App. 3d 138, 141, 205 Cal. Rptr. 513 (1984)
26   (illegibility of tiny five and one-half point type was a factor in holding that the release
provision of an agreement was enforceable, as it could not easily be read by persons of
27   ordinary vision); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1114 (N.D.
28

1    for comparison to the EPA estimate rates for other vehicles, if it was not intended to

2    actually make reasonable consumers believe that this would be the actual mileage to be

3    expected in real world driving conditions.  What were reasonable consumers supposed to

4    believe when an mpg number is all that is given to them, or if the mpg number is

5    accompanied by affirmative misrepresentations that this rate would be achieved when

6    driving under real world conditions and circumstances?  If GM intended the numbers to

7    be taken a different way, why did it not adequately and appropriately make such

8    disclosures in the advertisements?  At the very least, these are relevant questions of fact

9    that cannot be determined at the pleading stage.

10          Furthermore, GM asserts that compliance with EPA and FTC rules and regulations

11   on disclosures and advertisements defeat reasonable reliance on deceptive

12   advertisements.  (GM Motion at p. 18-19.)  However, GM cannot avail itself of such a

13   defense on several grounds.  First, the crux of Plaintiff's allegations is that GM actually

14   failed to make disclosures that are required by or are consistent with EPA and FTC rules

15   and guidelines and made affirmative misrepresentations beyond what GM is required to

16   disclose.   Second, whether a federal statute states that certain disclosures are not a

17   "warranty" may limit a plaintiff's ability to bring a breach of warranty claim, but has no

18   effect on barring fraud-based claims.  *See Paduano*, 169 Cal. App. 4th at 1466-73

19   (granting Honda's motion for summary judgment on the plaintiff's warranty claims but

20   denying the motion as to consumer fraud claims).  Third, to the extent the Court

21   determines that any part of the FTC Guides may restrict Plaintiff's ability to bring any of

22   his claims, it is worth noting that the Federal Trade Commission's guides are interpretive,

23   and not fixed rules.  *FTC v. Mary Carter Paint Co.*, 382 U.S. 46, 48, 86 S. Ct. 219, 221

24   (1965).  These guides "do not purport to be a concise statement of the present status of

25   the law which the courts are bound to follow."  *Allis-Chalmers Mfg. Co. v. White Consol.*

26   *Indus. Inc.*, 414 F.2d 506, 524 (3d Cir. 1969).

27

28   Cal. 2010) (consumers cannot be expected to read and understand obscured disclosures in
     dense materials).

-20-

1   GM also asserts arguments that are wholly factual in nature which lie far beyond

2   the scope of the pleadings and which would undoubtedly be subject to genuine dispute at

3   a later stage in this proceeding after merits and class discovery are completed.  These

4   arguments include GM's puzzling assertion that a very specific "google" search result

5   can provide further information on EPA estimate ratings, that Plaintiff should have

6   engaged in that very specific "google" search to discover accurate material information

7   that is contrary to GM's deceptive advertised statements, that the order of "google"

8   search results is a function or cause of widespread consumer knowledge and

9   understanding, and that Plaintiff should have understood "EPA estimate" a particular way

10   even though this very term was not even adequately disclosed to him in the

11   advertisements.  (GM Motion at pp. 16-17.)  However, Plaintiff objects to the

12   introduction of this evidence and such arguments that reach far outside of the FAC,

13   which is inappropriate at the Federal Rule of Civil Procedure 12 (b)(6) stage and must not

14   be considered.  *See* Fed. R. Civ. P. 12(d) ("If, on motion under Rule 12(2)(6) or 12(c),

15   matters outside the pleadings are presented to and not excluded by the court, the motion

16   must be treated as one for summary judgment under Rule 56.  All parties must be given a

17   reasonable opportunity to present all the material that is pertinent to the motion.").

18   Therefore, Plaintiff submits that the element of reasonable reliance has been

19   sufficiently alleged in the FAC.

20   ## IV

21   ## CONCLUSION

22   For the reasons set forth above, Plaintiff respectfully requests that the Court deny

23   Defendant's motion to dismiss in its entirety.

24   DATED: January 27, 2012.                **MCCUNEWRIGHT, LLP**

25

26                                           BY:  **/s/**_____

27                                                 Richard D. McCune
                                                  Attorneys for Plaintiff
28