LINK: 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** (In Chambers)

# I.
# INTRODUCTION

Plaintiff Yung Kim brings this putative class action against Defendant General Motors, LLC ("GM"), alleging that GM engaged in a systematic and misleading advertising scheme in which EPA estimated mileage figures and numbers derived from these figures were represented as "actual, expected mileage under normal, real world driving conditions." (Docket No. 4, First Am. Compl. ("FAC") ¶ 25.) Kim brings a number of state law claims, including for violations of California's consumer protection and unfair competition laws, and for fraud. (Id. ¶¶ 39–68.) GM now moves, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's amended complaint. (Docket No. 7.) For the reasons that follow, the Court concludes that the motion should be **GRANTED in part** and **DENIED in part**.

# II.
# BACKGROUND

Plaintiff purchased a new, 2011 GMC Terrain crossover vehicle ("Terrain") on or about January 3, 2011, at a California GM dealership. (FAC ¶ 9.) Prior to his purchase, Plaintiff had viewed television commercials and print advertisements about the Terrain, read about the vehicle in various magazines, visited GM's website, and on several occasions visited the dealership where he was provided with brochures and information about the vehicle. (Id. ¶¶ 10–11.) Plaintiff was impressed with the "high gas mileage that the materials advertised the Terrain would achieve," and alleges that he was led, due to the nature of these advertisements, to believe that they were reflective of the mileage he would receive during "normal, real-world highway

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

use." (Id. ¶ 11.)

Plaintiff cites three such representations or advertisements that led him to this belief. (Id.) The first, entitled "Going the Extra Mile to Make the Most Out of Every Inch," is from the 2011 Terrain's brochure. (Id.; FAC, Exs. 1–2.) The brochure states that the Terrain "has the best highway fuel economy in its class at 32 highway miles per gallon" and includes a chart with the language "UP TO 600 HWY Miles." (Id.) Next to this chart is a map outlining a route from Chicago, past Cleveland and Buffalo, to Rochester, New York, which Plaintiff alleges is more than a 600 mile trip. (Id.) The brochure also states that "the Terrain offers class-leading highway fuel economy without sacrificing performance . . . . [The] Terrain offers 32 EPA-estimated highway miles per gallon, and can go up to 600 highway miles on a single tank of gas." (Id.)

Second, Plaintiff cites another page of the 2011 Terrain brochure, where GM states that "AT 32 HIGHWAY MILES PER GALLON, WE GAVE IT BETTER FUEL ECONOMY THAN ANY SUV OR CROSSOVER," with the words "EPA estimated" in a fine print footnote. (Id. ¶ 11; FAC, Ex. 4.)

Third, Plaintiff cites to an advertisement from Road & Track magazine, which states "32 HWY MPG RATED, AVAILABLE POWER LIFTGATE, SEATING FOR 5 ADULTS. WE PROBABLY HAD YOU AT 32 MPG," and similarly relegates the words "EPA estimate" to a footnote. (Id. ¶ 11; FAC, Ex. 3.)

Plaintiff alleges that in light of these advertisements, he "reasonably believed that the Terrain would achieve approximately 32 miles per gallon and travel 600 miles on a single tank of gas during normal, real-world highway use," and that he therefore "heavily relied" on these representations in making his decision to buy the Terrain. (Id. ¶¶ 12–13.) However, after purchasing the vehicle, Kim "discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use," and that it "does not travel 600 miles on one tank of gas . . . ." (Id. ¶¶ 15–16.) Despite efforts to resolve the issue with the dealership, Kim was unable to achieve higher gas mileage. (Id. ¶ 14.)

Plaintiff cites to two additional statements and advertisements that, while not affecting his decision to purchase the vehicle, could reasonably have misled other members of the purported class. (Id. ¶ 26.) Plaintiff first points to a press release from June 1, 2011, entitled "May U.S. Retail Sales Rise 9 Percent on Demand for Fuel-Efficient Vehicles." (Id.) In reference to the Terrain and Chevrolet Equinox ("Equinox"), Don Johnson, GM's Vice President of United States Sales Operations, is quoted as saying that "[c]ustomers love the 610-mile range that our

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

compact crossovers provide and they get it without sacrificing capability or style." (Id.) Plaintiff also describes GM's Chevrolet website for its "Equinox" vehicle, which states that "[m]eticulous craftsmanship . . . and class-leading highway fuel economy (5, 6) sets Equinox apart from the rest. With 32 MPG highway and a highway driving range of up to 600 miles . . . ." (Id.) The only mention of an "EPA estimate" is found in a footnote in reference to "class-leading highway fuel economy," not "32 MPG highway," and, in order to view the footnote, the user must drag the mouse over the text entitled "view additional disclosures" at the bottom of the web page. (Id.) Finally, Plaintiff notes that a number of these advertisements do not disclose that the actual real world mileage "will vary." (Id.)

On the basis of these facts, Kim asserts six state law causes of action, for [1] violations of California Business & Professions Code section 17200 ("Unfair Competition Law" or "UCL"); [2] violations of Business & Professions Code section 17500 ("False Advertising Law" or "FAL"); [3] violations of California Civil Code section 1750 ("Consumer Legal Remedies Act" or "CLRA"); [4] fraud; [5] negligent misrepresentation; and [6] deceit, in violation of California Civil Code section 1710. (FAC ¶¶ 39–68.)

Defendant now moves to have the complaint dismissed, contending that Plaintiff's claims are preempted by federal law, and/or that they are inadequately pleaded. (Docket No. 8, Mem.) Although the parties often discuss the various misrepresentations interchangeably, for purposes of this motion the Court separates the purportedly false advertisements into three categories: [1] those that Plaintiff alleges do not adequately disclose the "EPA estimate" language; [2] those that fail to include the language "actual mileage will vary"; and [3] those that make representations concerning the vehicle's tank range, in particular the advertisement displaying a map outlining a route from Chicago to Rochester. With this framework in mind, the Court addresses Defendant's contentions in turn.

## II.
## DISCUSSION

### A. LEGAL STANDARDS UNDER RULES 12(B)(6) AND 9(B)

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120–21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to allow a complaint to survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. Id. at 1950.

A complaint generally need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation, alteration, and internal quotations omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). That is, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1949–50; see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

Moreover, Rule 9(b) imposes heightened pleading requirements for claims of fraud, or claims that sound in fraud. See Fed. R. Civ. P. 9(b). A plaintiff "must state with particularity the circumstances constituting fraud," but can allege generally "[m]alice, intent, knowledge, and other conditions of a person's mind." Id. The particularity requirement "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981). In addition, the plaintiff must "set forth what is false or misleading about a statement, and why it is false." Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotations omitted). These requirements "ensure[] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

**B. FEDERAL PREEMPTION**

The Court first addresses Defendant's contention that all of Plaintiff's claims are preempted by federal law. In its motion, GM characterizes Plaintiff's claims as requiring the disclosure of additional facts "in order to ensure that the EPA fuel economy estimates did not deceive consumers." (Mem. at 21.) GM argues that such requirements are "expressly pre-empted by 49 U.S.C. § 32919 and, separately, conflict with the 'no warranty' provisions of 49 U.S.C. § 32908(d) and the FTC's interpretation of section 5 of the FTC Act. (Id.) In his opposition, Plaintiff avers that GM "erroneously attempts to re-frame" his claims as "challenging the EPA estimates themselves or requiring additional information than what is required under federal law." (Opp. at 4.) Plaintiff contends that, "to the contrary, [he] challenges GM advertisements which overstate MPG ratings, and then omit or fail to adequately disclose material disclaimers which are required to be disclosed by or consistent with federal law to advise customers of this fact," as well as "GM's advertisements which affirmatively misrepresent the mileage range of the vehicle on a single tank of gas." (Id.)

**1. EXPRESS PREEMPTION**

State law is pre-empted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, where "Congress . . . define[s] explicitly the extent to which its enactments pre-empt state law." English v. General Elec. Co., 496 U.S. 72, 78–79 (1990). "Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." Id. (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983)).

   ***a. 49 U.S.C. § 32919(a)***

Defendant first contends that Plaintiff's claims are expressly preempted by 49 U.S.C. § 32919 because, if allowed to go forward, they would amount to "inconsistent state regulation of fuel economy or the disclosure of fuel economy." (Mem. at 21.)

Section 32919(a) states in relevant part that:

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

covered by an average fuel economy standard under this chapter.

49 U.S.C § 32919(a).

A California appellate court addressed this precise issue in <u>Paduano v. American Honda Motor Co., Inc.</u>, 88 Cal.Rptr.3d 90 (2009). In that case, an owner of a Honda vehicle brought suit against the manufacturer under the UCL and CLRA for allegedly false and/or misleading statements concerning the automobile's fuel economy. <u>Id.</u> The court found that Section 32919(a) had no application to the plaintiff's claims, explaining that:

> These "standards" are not the same as the fuel economy estimates for each model of vehicle that are required to be posted on the Monroney label, pursuant to section 32908. Rather, the "standards" are exactly what the name suggests: the minimum efficiency benchmarks that automobile manufacturers must meet. In contrast, the EPA mileage estimates that are at issue in this case refer to the actual measurement of the fuel efficiency of a particular model of car—calculations that are used, among other purposes, to determine whether a manufacturer has met the applicable fuel economy standards for a particular year. <u>Consequently, one cannot read Paduano's claims as seeking to impose or enforce a law "related to fuel economy standards or average fuel economy standards." (49 U.S.C. § 32919(a).) Enforcement of the UCL and/or CLRA in this case would not in any way "relate to" the imposition of minimum fuel efficiency performance standards on Honda or other vehicle manufacturers for a class, subclass, or fleet of vehicles. Thus, section 32919(a) of title 49 of the United States Code simply has no application in this case.</u>

<u>Id.</u> at 109–110.

The Court finds the reasoning in <u>Paduano</u> persuasive, adopts that reasoning in this case, and concludes that Plaintiff's claims against GM are not preempted by Section 32919(a). The California statutes under which Plaintiff brings his claims have no relationship to the actual fuel efficiency standards which are regulated by that statute. Rather, Plaintiff's claims pertain largely to representations made by GM in <u>characterizing</u> what sort of fuel economy their vehicle achieves. Congress has in no way made clear in Section 32919(a) that it intended to preempt any law related to advertising or disclosure.

### a. 49 U.S.C. § 32919(b)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

Defendant next contends that Plaintiff's claims are preempted by 49 U.S.C. § 32919(b), which states in relevant part that:

> When a requirement under section 32908 of this title is in effect, a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by section 32908 only if the law or regulation is identical to that requirement.

49 U.S.C. § 32919(b). Section 32908 requires car dealers to maintain a label, commonly referred to as a "Monroney" label, on every new vehicle, detailing, among other things, the fuel economy of the vehicle and estimated annual fuel costs. 49 U.S.C. § 32908(b)(1). Additionally, the dealers must make available a "fuel economy information booklet" for consumers. 49 U.S.C. § 32908(b)(1)(D), 32908(c)(1).

GM argues that "any state law that purports to create additional – and therefore not 'identical' – requirements regarding disclosure of EPA-mandated fuel economy estimates is preempted." (Mem. at. 21.) The court's analysis in <u>Paduano</u> is again instructive:

> Contrary to Honda's characterization of Paduano's UCL and CLRA claims, Paduano is not claiming that disclosing the EPA mileage estimates is, by itself, deceptive. Rather, Paduano maintains that Honda has voluntarily made additional assertions, beyond the disclosure of the mileage estimates, that are untrue or misleading, and that federal law does not require, or even address, these additional assertions. Paduano's claims are based on statements Honda made in its advertising brochure to the effect that one may drive a Civic Hybrid in the same manner as one would a conventional car, and need not do anything "special," in order to achieve the beneficial fuel economy of the EPA estimates. It is not, as Honda maintains, the disclosure of the EPA estimates that Paduano claims is deceptive per se. What Paduano is challenging is Honda's added commentary in which it alludes to those estimates in a manner that may give consumers the misimpression that they will be able to achieve mileage close to the EPA estimates while driving a Honda hybrid in the same manner as they would a conventional vehicle. Paduano does not seek to require Honda to provide "additional alleged facts" regarding the Civic Hybrid's fuel economy, as Honda suggests, but rather, seeks to prevent Honda from making misleading claims about how easy it is to achieve better fuel economy. Contrary to Honda's assertions, if Paduano were to prevail on his claims, Honda would not have to do anything differently with regard to its disclosure of the EPA mileage estimates.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

88 Cal.Rptr.3d at 110. As the Paduano court further explained, "neither the UCL nor the CLRA is a law that is based 'on' disclosure of fuel economy or fuel operating costs; rather, the UCL and CLRA are both laws of general application that create a duty not to deceive . . . ." Id.

Here, as in Paduano, Plaintiff does not challenge the disclosure of the EPA estimate itself, nor does it focus on representations made on the Monroney label. (FAC ¶ 26; Opp. at 4.) As in Paduano, Plaintiff cites to additional statements, made in advertisements rather than on a Monroney label, that Plaintiff alleges could lead a reasonable consumer to believe that the vehicle is capable of achieving these EPA estimates under real world conditions. In other words, Plaintiff challenges GM's use of the EPA estimates in a way that may give consumers the mistaken impression that they are able to achieve real-world mileage and tank range derived from those figures.

Accordingly, the Court finds that the claims brought by Plaintiff are not expressly preempted by 42 U.S.C. §§ U.S.C. § 32919(a) or (b).

**2. CONFLICT PREEMPTION**

Defendant also contends that Plaintiff's claims must fail because they conflict with federal law and therefore "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ." (Mem. at 24) (citing Geier v. American Honda Motor Co., 529 U.S. 861, 873 (2000)).

Conflict preemption of a state law occurs when "compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." United States v. Locke, 529 U.S. 89, 109 (2000)). "Congressional purpose," as the Supreme Court has noted, is the "ultimate touchstone" of the court's inquiry on conflict preemption. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001).

### a. 49 U.S.C. § 32908

Defendant first argues that if "an EPA estimate included in a 'window sticker' is not a 'warranty' under federal or state law . . . then surely any claim that the mere inclusion of this same estimate in an advertisement is such a guaranty, warranty or promise flatly conflicts with federal law." (Mem. at 24.) As noted above, Section 32908 requires car dealers to maintain a label, commonly referred to as a "Monroney" label, on every new vehicle, detailing, among

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

other things, the fuel economy of the vehicle and estimated annual fuel costs. 49 U.S.C. § 32908(b)(1).

Congress enacted the Energy Policy and Conservation Act (EPCA) in 1975 to address America's "chronic energy supply shortages, particularly petroleum supply shortages, experienced . . . in the early 1970's." H.R. Rep. No. 106-359, at 2 (1999). The EPCA was created, in part, to "provide for improved energy efficiency of motor vehicles" and to "provide a means for verification of energy data to assure the reliability of energy data." 42 U.S.C. § 6201.

In True v. American Honda Motor Co., Inc., a district court in this district considered an analogous conflict preemption argument. 520 F.Supp.2d 1175, 1180 (C.D. Cal. 2007). Like Kim, the plaintiff in True brought claims under the CLRA and UCL concerning allegedly false and deceptive advertisements made by Honda "regarding the fuel efficiency and cost savings of its Honda Civic Hybrid automobile." Id. at 1178. Honda argued that Section 32908 preempted the plaintiff's claims. The True court described the applicable federal laws as follows:

> Section 32908(b) of Title 49, U.S.C., requires automobile manufacturers to display Monroney Stickers, containing certain information, on each vehicle. Further, dealers are required to make available for prospective buyers a booklet containing information on a vehicle's fuel economy. 49 U.S.C. § 32908(c). EPA regulations require that the Monroney Stickers contain the phrase "your actual mileage will vary depending on how you drive and maintain your vehicle." 40 C.F.R § 600.307–08(b)(4).

True, 520 F.Supp.2d at 1175. The True court found that "[n]othing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these stickers and booklets." Id. Significantly, the court concluded that "it would be an unreasonable assumption . . . that Congress intended to preempt states from regulating false or misleading advertising of a vehicle's fuel efficiency and cost savings." Id. In other words, the existence of the federal regulatory scheme does not preclude states from barring the misuse of EPA fuel efficiency data in advertising or other promotional materials.

The Paduano court agreed with the True court's analysis regarding conflict preemption:

> We agree with the True court that allowing states to regulate false advertising and unfair business practices may further the goals of the EPCA, and we reject Honda's claim that California's regulation of deceptive advertising somehow acts as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

88 Cal.Rptr.3d at 114.

The Court concurs with the analysis and the conclusions drawn by the True and Paduano courts. 49 U.S.C. § 32908 plainly relates solely to Monroney Stickers and booklets that federal law requires be given to consumers. As in those cases, California's regulation of false advertising made in print media and elsewhere does not stand as an obstacle to the accomplishment and execution of these purposes and objectives. Indeed, it would seem to further those purposes.

### b. FTC Regulations

Finally, GM contends that Plaintiff is seeking to penalize it "for making one rather than another of the two permitted choices" in advertising its vehicle's fuel economy, in conflict with 16 C.F.R. § 259.2. (Mem. at 24–25.) Section 259.2 permits automobile manufacturers "to advertise the EPA estimates and make the disclosures required by the FTC for that kind of advertising, or to advertise non-EPA estimates and make the much more onerous FTC-required disclosures for that kind of advertising." (Mem. at 25.)

While the FTC may regard the phrase "EPA estimate(s)" as the "minimum disclosure necessary to comply with [this regulation]" within all media platforms, see 16 C.F.R. § 259.2(a)(2) n. 5, nowhere does the FTC regulation prevent states from applying stricter disclosure standards. See True, 520 F. Supp. 2d at 1181 ("Nothing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these stickers and booklets.") By contrast, the True court held that "[r]equiring the display of fuel efficiency information could further this Congressional purpose," rather than conflict with or stand as an obstacle to it. Id.

For the same reasons, the Court finds that the FTC regulation does not preempt Plaintiff's claims. As noted above, Plaintiff merely takes issue with the manner in which GM represents these EPA figures in various advertisements, which is not covered by, nor would it conflict with FTC regulations.

### C. SUFFICIENCY OF ALLEGATIONS

#### 1. RULE 9(B)

GM contends that because Plaintiff's asserts a cause of action for fraud, and because various of his other claims sound in fraud, Plaintiff must satisfy the heightened pleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

requirements of Rule 9(b). (Mem. at 14.)

Because it concludes that Plaintiff has satisfied Rule 9(b)'s heightened pleading requirements, the Court finds it unnecessary to address the Rule's applicability to Plaintiff's individual causes of action. Plaintiff has described various aspects of the allegedly fraudulent scheme in detail. He has alleged the "specific content of the false representations," describing and even attaching to his FAC the relevant advertisements and statements made therein. (FAC ¶ 11.) Plaintiff also explains why such representations were false or misleading, alleging that they led him and other consumers to believe that they could achieve such mileage under normal driving conditions. For instance, Plaintiff points to a GM advertisement stating that the Terrain can travel up to 600 miles on a single tank of gas, with an illustration of a route from Chicago to Rochester, which he alleges caused him to believe that he could actually achieve such fuel economy and range. (Id. ¶¶ 11–12.) Plaintiff has also alleged that Defendant was responsible for these misrepresentations, which were included in its own catalog and paid advertisements. (Id. ¶ 11.)

In short, the alleged misrepresentations are clearly described in the FAC, and the Court finds that Plaintiff's allegations are sufficiently detailed to "give defendant[] notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that it ha[s] done anything wrong." Semegen, 780 F.2d at 731. Accordingly, the Court finds that Plaintiff's allegations meet the heightened pleading standards of Rule 9(b).

**2. LIKELIHOOD OF DECEPTION**

The CLRA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices" in the sale of goods to any consumer. Cal. Civ. Code § 1770(a). The UCL prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500.

To state a claim under the CLRA, FAL, and UCL, a plaintiff must allege facts showing "that members of the public are likely to be deceived." Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc., 421 F.3d 981, 985 (9th Cir. 2005). In determining whether members of the public are likely to be deceived, the Court must apply a "reasonable consumer" test. Williams v. Gerber Prods. Co., 523 F.3d 934, 938 (9th Cir. 2008) (applying the "reasonable consumer" test to claims brought under the UCL, FAL, and CLRA); Lavie v. Procter & Gamble Co., 129 Cal.Rptr.2d 486, 493–495 (2003) (applying the "reasonable consumer" test to claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

brought under the UCL and FAL). A UCL cause of action "may be based on representations to the public which are untrue," as well as those which are partly accurate, "but will nonetheless tend to mislead or deceive." Paduano, 88 Cal.Rptr.3d at 104 (citations omitted). In other words, a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information," is actionable under the UCL." Id. (citations omitted). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides . . . .'" Id. (citations omitted). However, "if the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may . . . be dismissed as a matter of law." Haskell v. Time, Inc., 857 F.Supp. 1392, 1399 (E.D. Cal. 1994).

Because the rule for deceptive practices under the "fraudulent" prong of the UCL applies equally to misrepresentation-based claims under the CLRA, see Consumer Advocates v. Echostar Satellite Corp., 8 Cal.Rptr.3d 22, 29 (2003), courts have addressed these claims together. See Paduano, 88 Cal.Rptr.3d at 103–106 (analyzing CLRA and UCL claims together); see also Neu v. Terminix Intern., Inc., U.S. Dist. LEXIS 60505, 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008). Defendant also alludes to Plaintiff's failure to sufficiently plead "justifiable reliance," which is an element of Plaintiff's fraud and negligent misrepresentation claims. For purposes of the present analysis, the standards are similar enough to be treated together. See, e.g., McKinnis v. Kellogg USA, 2007 WL 4766060, at *5 (C.D. Cal. Sep. 19, 2007) ("Even assuming, arguendo, that the characteristics of the Froot Loops box constitute misrepresentations, Plaintiffs cannot establish justifiable reliance because, again, Plaintiffs cannot establish that the reasonable consumer would rely on these representations in assuming that Froot Loops contains actual fruit.")

As previously stated, the Court separates the purportedly misleading advertisements into three categories: [1] those that Plaintiff alleges do not adequately disclose the "EPA estimate" language; [2] those that fail to include the language "actual mileage will vary"; and [3] those that discuss "tank range" based on the EPA estimate, including an advertisement that translates that "tank range" into a distance and a map outlining a route from Chicago to Rochester. The Court addresses these representations in turn.

As to the first and second sets of advertisements, the Court finds that the allegations are insufficient to satisfy the standards articulated above. These advertisements either [1] state that the vehicle achieves "32 highway miles per gallon," but relegate the "EPA-estimated" disclosure to a footnote or smaller text on the same page (FAC ¶ 11); or [2] omit the words "actual mileage will vary" from the represented fuel economy (FAC ¶ 26).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

  Such allegations are weaker than those rejected in <u>Paduano</u>, where the plaintiff complained of Honda's use of footnotes, including some on separate pages, to disclose that the Honda Civic's MPG rating was an EPA estimate. 88 Cal.Rptr.3d at 104. As in that case, GM has done nothing more than utilize footnotes to comply with disclosure rules under federal law. As the <u>Paduano</u> court held, "there is nothing false or misleading about [a manufacturer's] advertising with regard to its statements that identify the EPA fuel economy estimates . . . ." <u>Id.</u> at 1470. Moreover, the FTC Industry Guide governing fuel economy advertising affirmatively states that inclusion of the phrase 'EPA Estimate(s)' is sufficient without more to comply with the FTC's regulations. 16 C.F.R. § 259.2(a)(2). <u>See</u>, <u>e.g.</u>, <u>Lavie</u>, 129 Cal.Rptr.2d at 494 ("FTC interpretation of the federal act has always been viewed as 'more than ordinarily persuasive' . . . in its construction of the breadth of the protection afforded consumers under the UCL . . . .") (citations omitted)). The Court agrees with <u>Gray v. Toyota Motor Sales, U.S.A.</u> which held that claims that "rely solely on advertisements that merely repeat the approved EPA mileage estimates, without any additional representations as to, for example, <u>a consumer's ability to achieve those figures under normal driving conditions</u>," must fail. 2012 U.S. Dist. LEXIS 15992, at *16 (C.D. Cal. Jan. 23, 2012) (citing <u>Paduano</u>, 88 Cal.Rptr.3d at 104–105) (emphasis added).

  However, the Court finds that Plaintiff adequately states claims with respect to the third set of misrepresentations. Plaintiff complains of a statement in the 2011 Terrain brochure concerning the vehicle's ability to travel "up to 600 highway miles on a single tank of gas," which is placed next to a map that illustrates a route from Chicago to Rochester. (FAC ¶ 11.) Plaintiff not only takes issue with the 600 mile range, which he alleges the vehicle is incapable of reaching, but also contends that the distance from Chicago to Rochester is more than 600 miles. (<u>Id.</u> ¶¶ 4, 11, 15.) GM contends that the Terrain catalog "displays a calculation showing that the 600 mile projected driving range" is the EPA-estimated highway MPG (32) multiplied by the approximate capacity of the fuel tank (18.8 gallons). (Mem. at 11.) GM argues that this calculation "clearly" reflects the "<u>approximate upper limit</u> of the Terrain's driving range, not a warranty of 'real world' fuel economy or driving range." (<u>Id.</u>) Plaintiff, on the other hand, contends that GM "affirmatively misrepresents that the advertised MPG ratings can be attained in the real world under normal performance by advertising that the vehicle can travel 600 miles on a single tank of gas." (Opp. at 2.)

  The Court finds that such statements, whether they be made through word or illustration, could mislead a "reasonable consumer." This representation falls precisely into the exception carved out by <u>Gray</u> and <u>Paduano</u>, because it implies that a consumer will be able to actually achieve the EPA fuel economy figures when driving in the real world. The brochure explicitly states that "the Terrain offers class-leading highway fuel economy <u>without sacrificing</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

performance," and represents that the Terrain "offers 32 EPA-estimated highway miles per gallon, and can go up to 600 highway miles on a single tank of gas," including a real world map to emphasize the point.

In Paduano, Honda included in its brochure a statement that a consumer could "[j]ust drive the Hybrid like you would a conventional car and save on fuel bills." 88 Cal.Rptr.3d at 119. In sustaining the plaintiff's UCL and CLRA claims, the court explained:

> Paduano maintains that Honda has voluntarily made additional assertions, beyond the disclosure of the mileage estimates, that are untrue or misleading, and that federal law does not require, or even address, these additional assertions. Paduano's claims are based on statements Honda made in its advertising brochure to the effect that one may drive a Civic Hybrid in the same manner as one would a conventional car, and need not do anything "special," in order to achieve the beneficial fuel economy of the EPA estimates.

Id. at 1477. In this case, Plaintiff similarly maintains that he reasonably relied on these "additional representations" made by GM as to tank range, which led him to believe that he could achieve those figures under normal driving conditions. Both parties agree that the purpose of EPA fuel economy estimates is to provide a consistent basis for comparing the fuel economy of competing vehicles relative to each other, and that such estimates are not designed to determine the actual expected mileage for a vehicle under "real world" driving conditions.[1] (FAC ¶ 20; Opp. at 1–2; Mem. at 4–5.) GM's attempt to blur the line between the calculation of mileage under the simulated EPA-estimate test and real world driving conditions is not persuasive, and is not supported by the case law.[2]

---

[1] For instance, a vehicle's EPA estimate for fuel economy is measured under controlled conditions in a laboratory, using special fuel, a professional driver, and a machine called a dynamometer which simulates the driving environment. (Mem. at 6; FAC ¶ 3.)

[2] Defendant's citation to Gray does not help its case. In Gray, two Toyota Prius owners sued the car manufacturer under the UCL, CLRA, and for fraudulent concealment, arguing that Toyota's failure to disclose the results of its internal fuel efficiency tests amounted to an actionable omission since it knew that the EPA mileage estimates were inaccurate. The court held that Toyota was not obligated to disclose that the Prius's actual mileage did not reach EPA estimates. 2012 U.S. Dist. LEXIS 15992 at *20–21. In reaching this decision, the court relied heavily on Paduano, which precluded Plaintiffs' UCL and CLRA claims "to the extent they are premised solely on representations regarding the Prius's EPA mileage estimates." Id. at *20. In the instant action, Plaintiff does not rely solely on representations regarding the Terrain's EPA mileage estimates, but on other statements which go beyond what GM is obligated to disclose. (See, e.g., FAC ¶ 12 ("Based on these representations, [Plaintiff] reasonably believed that the Terrain would . . . travel 600 miles on a single tank of gas during normal, real-world

**LINK: 7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-06459 GAF (MRWx) | Date | March 9, 2012 |
|---|---|---|---|
| Title | Yung Kim v. General Motors, LLC et al. | | |

     For these reasons, the Court finds that a reasonable consumer could be deceived by this third category of advertisements. Accordingly, as to these representations, the motion is **DENIED**.

### III.
### CONCLUSION

     For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to dismiss. All claims are **DISMISSED** insofar as they rely on the first and second categories of representations discussed above. In all other respects, the motion is **DENIED**. The hearing on this motion presently scheduled for March 12, 2012 is **VACATED**.

     **IT IS SO ORDERED.**

---

highway use.").) Moreover, Kim maintains that GM has affirmatively misrepresented the Terrain's expected fuel economy. (FAC ¶¶ 12, 15, 26–27; Opp. at 4, 11, 14, 17, 18, 20.) To the extent that Kim's claims are premised solely on representations regarding the Terrain's EPA mileage estimates, the Court finds that they are insufficient, as discussed above. (See FAC ¶ 12 ("[N]one of these advertisements provide any disclaimer that the actual gas mileage under normal, real world driving conditions will actually and substantially vary from the advertised gas mileage . . . .").)